CHARLES BALLANCE, Plaintiff in Error, *v.* LYMAN J. LOOMISS *et al.,* Defendants in Error.

### ERROR TO PEORIA.

A party who seeks to set aside a judgment by a proceeding in chancery, so as to obtain a new trial, must show himself clear of all *laches,* and also that every effort on his part was made to prevent the judgment against him.

A party is not bound to answer such portions of a bill as are demurred to, until the demurrer has been passed upon.

If different lots of land have been sold *en masse,* (although they may have been previously offered separately,) greatly below their value, the courts may interfere by injunction to prevent the delivery of the deed.

The deputy of an absconded sheriff may continue to act, until the office of the principal has been vacated.

THE bill, in this case, seeks to set aside a sale of a quarter section of land and a town lot, made on the 2nd day of November, 1850, by the deputy sheriff of Peoria county, by virtue of an execution in favor of defendants in error against Ballance, plaintiff in error.

The bill was filed on the first day of December, A. D. 1851, and alleges (among other matters) the following facts:

That the defendants in error recovered a judgment against the plaintiff in error, in the Peoria Circuit Court, on the 3rd day of April, 1850, for the sum of $180.70 and costs of suit, on which an execution was issued, July 6th, 1850, and placed in the hands of Clark Cleveland for collection, and the execution was levied on the town lot and land by Cleveland, who was the deputy of Compher, sheriff of said county, on the 12th of September, and sold on the 2nd day of November, 1850, to the defendants in error, for $226.79, and a certificate of purchase was executed to them, showing that they would be entitled to a deed on the 2nd February, 1852, unless redeemed, etc.

That said property was sold together, when it should have been sold separately, and was worth *four* times the amount bid for it.

That Cleveland had no authority to sell, because he claimed to be the deputy of Compher, who had absconded before the execution came to Cleveland's hands.

The answer of the defendants sets forth:

That they admit that they purchased both parcels of land together, but allege that they were first offered separately by the deputy sheriff, who could get no bid, and were then offered and sold *en masse.* They further allege, that the title to the lot was encumbered by "French claims," and it was very doubtful whether Ballance's interest was worth anything.

Ballance *v*. Loomis et al.

That the tract of land was encumbered by mortgages, and that Ballance had no deed of *record* to the land, and the claim or title of Ballance to both tracts was so uncertain that no value could be placed on them.

Admit that Compher had left the county, but did not know that he would not return.

On the trial, the defendants offered in evidence the execution and officer's return thereon, which return shows that the property was first offered separately and no bidders had. It was then sold *en masse*.

The defendants also proved, by *Clark Cleveland*, that Ballance had lived in Peoria twenty years and was a man of ample means; that he acted as deputy under Compher, the sheriff, from 1846 to November, 1850, when the new sheriff was elected. Van Ness Smith also was a deputy of Compher, and they both continued to act, after Compher left, as deputy sheriffs, until a new election was had in November.

He also proved that it was generally understood and believed, that Ballance's title to the lot was not good, and that it was covered with French claims.

*Jacob Gale* also sustains Cleveland.

*M. Williamson* proves that mortgages were on the record against the land.

The court below decreed that Ballance should pay to plaintiffs below $295.28, with interest from the date of the decree, on or before the first of July next, and that upon such payment the sale should be set aside.

From this decision of the Circuit Court the defendant below brought the case here by writ of error.

C. Ballance, *Pro se.*

H. M. Wead, for Defendants in Error.

Walker, J. The first error assigned is the sustaining a demurrer to that portion of complainant's bill which sets up and relies upon facts to entitle him to a new trial at law. The bill alleges that defendants had no grounds of recovery in their action at law, and alleges that they were employed to perform the labor by the contractors, and not by complainant; that the verdict and judgment were erroneous and unjust, and that he had attempted to bring the case to this court, but was prevented in consequence of being unable to procure a bill of exceptions so as to file the record, within the time required by the rules of this court; that the case was dismissed for want of the filing of the transcript of the record, and that he was absent at Spring-

field attending to important business in the United States Circuit Court, and was acting as a grand juror in that court and was unable to obtain leave of absence to attend the Supreme Court to give his attention to the case ; that he telegraphed, and wrote to, and sent an affidavit to Mr. Coffing, with a request that he would attend to procuring further time to file the record, but the matter was not attended to by him.

The bill proceeds upon the grounds that the complainant had a complete remedy at law, but asks a new trial upon the grounds of unavoidable accident. It is a well-recognized rule of equity, that where a party has an adequate remedy at law, and fails to rely upon it in that form, he will not be heard to insist upon it in equity, unless he has been prevented from doing so by accident and circumstances over which he had no control, and which every reasonable effort on his part could not have prevented. Any *laches* on his part will prevent his obtaining relief in equity. If it appears that the judgment complained of is unjust, and that the party in good faith has used, or attempted to use, all the means given him by the law to assert his rights by active efforts on his part, made in good faith, and to the extent that a party has it in his power to use, but has nevertheless been prevented from presenting a defense to the claim, equity should grant a new trial at law. But in this case, we think the facts disclosed by the bill fall far short of the efforts required to entitle a party to such relief. The judge was not seen to procure the bill of exceptions, but a letter was only written to him for that purpose, which remained unanswered, and no further steps are alleged to have been taken. An attorney at Ottawa was telegraphed and written to, and an affidavit sent to him, requesting him to apply for further time to file the record. Whether this attorney was there, or received the communication, or had undertaken to appear for complainant, is not shown. Nor does it appear that an answer to the dispatch was requested, notifying complainant whether he might rely upon the services of the attorney thus addressed. He should have procured an attorney who agreed to give the matter his attention, and having failed to do so, it cannot be regarded as an inevitable accident which ordinary prudence could not have foreseen and avoided, but manifests a want of the most ordinary care and prudence. The demurrer was therefore properly sustained.

The overruling the exceptions to the answer was proper. They questioned the sufficiency of the answer to that portion of the bill which referred to the defense at law, and which was demurred to by defendants. They were not bound to answer that portion of the bill to which they had demurred, while it was pending and undisposed of by the court. If the demurrer

had been overruled, then they would have been properly required to answer that part of the bill, but until that was done it constituted a sufficient answer to that portion of the bill to which it was interposed. The answer is in other respects sufficient and unobjectionable.

It is likewise insisted that the sale was void because two separate disconnected tracts of land were offered for sale in mass and not separately, and that they were so purchased by the defendants on one bid for the amount of the judgment and costs. The certificate of purchase states that the two tracts of land were offered for sale at public vendue and that the plaintiffs in execution bid the sum of $226.79 which was the highest and best bid for said tracts or lots of land, and they were struck off to them at that sum. The return of the sheriff to the execution, shows that the tracts were offered separately, and that there was no bid for either, and that they were then offered for sale together, when they were struck off to plaintiffs in execution, on their bid.

This court in the case of *Day* v. *Graham*, 1 Gilm. R. 435, say that where the purchaser of a number of separate tracts of land in mass, is the plaintiff in execution, and before he conveys to another, the court will set aside the sale upon motion. But after he conveys to another person, or where a third person becomes the purchaser, the court will not determine in this summary way, questions which may affect the rights of others not before the court, without opportunity of explaining away circumstances which might destroy his title. And again in the case of *Stewart* v. *Croes et al.*, 5 Gilm. R. 442, this court say: "Had there been an allegation that the land was worth $1,000 at the time of sale, instead of at the time of filing the bill, such allegation in connection with the other statements in the bill, would have presented a clear case for the intervention of a court of equity, for it would never be allowable for an officer to sell in mass, a tract of land worth $1,000, to satisfy an execution for less than thirty dollars, when the tract was susceptible of division, and the sale of a small part would have satisfied the debt." In this case the evidence shows that the city lot was well improved and was worth three thousand dollars or upwards, and the land from sixteen hundred to twenty-four hundred dollars, making the aggregate about five thousand dollars. Although there seems to be some question about the title to the lot and some incumbrance upon the land, still we cannot but regard the sale as at a great sacrifice when it was sold for only about two hundred dollars, and as bringing this case fully within the case of *Stewart* v. *Croes*, and invests the court with jurisdiction to grant relief against this sale.

The bill in this case prays an injunction to prevent the execution of a deed upon this sale, and for general relief. And upon the whole record we are of the opinion that the complainant is entitled to have a perpetual injunction against the sheriff and all others acting for him, restraining them from executing a deed under the sale, upon his paying to the defendants the full amount of the judgment and costs with interest, until the day the money shall be paid.

Until the office of the sheriff was declared to be vacant by a court of competent jurisdiction, or until an election was held and a successor was elected and qualified, the deputies of Compher might we think discharge the duties of the office. The fact that the sheriff had absconded, had not been judicially determined, nor had a successor been elected and qualified, and persons having process could not certainly know the fact, and to hold that he had absconded, that the deputies ceased to have power to act when he absconded, would render all their acts void, from the time he left the county. They were officers *de facto* and while acting as such, their official acts will not be inquired into in a collateral proceeding, and all their acts must be held to be binding until the office of their principal was vacated by a direct proceeding.

This disposes of the assignment of errors presented by both the complainant and defendants, and no error is perceived requiring a reversal of the decree of the Circuit Court, which is affirmed, and that complainant have sixty days from the date of the affirmance of the decree to comply with its terms, and perform its requirements.

*Decree affirmed.*