## HOSKINS V. HATTENBACK AND CHARLES.

1. CHANCERY PRACTICE: DEMURRER. In the chancery practice, to say by demurrer that there is "no equity in the bill" reaches all matters of substance, and those only. If the objection is to the form of the bill the particular defects or objection must be stated.

2. WHEN A NEW TRIAL AT LAW SHOULD BE DECREED IN EQUITY. When it would be proper for a court of law to grant a new trial on the ground of newly discovered evidence if the application is made while the court has power so to do; it is equally proper for a court of equity to decree a new trial when the application is made on the ground of evidence discovered after the court of law ceased to have power to grant it.

3. SAME. Admissions made by a party after the trial of a cause may constitute sufficient ground for ordering a new trial.

*Appeal from Woodbury District Court.*

MONDAY, DECEMBER 22.

IN March, 1858, Hattenback sued the complainant Hoskins in trespass, and afterwards in October, 1859, recovered judgment for about $2,400. In 1860 (October), this bill was filed for a new trial. All of the pleadings in the law action are set out. It is averred that the main issue in that case was, whether the alleged purchase of the goods in controversy by Hattenback from Henneman & Gambert, was fraudulent and void as against creditors, that complainant established the fraudulent purpose on the part of the

debtors but was unable to bring such knowledge home to the purchaser, Hattenback. The ground upon which the new trial is asked is "newly discovered evidence." To show diligence and the right to the rehearing, the bill contains these averments: "On the trial of the action at law, complainant showed that Hattenback had knowledge of a portion of the indebtedness of Henneman & Gambert; that defendant (Hattenback) was a clerk of said H. & G., at the time of said sale; had but little or no means; and in fact paid but a small portion of the consideration in money, the principal part being in notes of defendant on time, and also many other facts and circumstances showing that said alleged sale on the part of said H. & G. was made with the intention and for the purpose of cheating, defrauding, delaying and hindering their creditors, but was unable to prove that said defendant had knowledge of such fraudulent intention; that this was all that was wanting to make out complainant's defense to that action; that previous to said trial he used every means and all diligence within his power to discover evidence that would enable him to prove said defendant's knowledge; that he discovered one witness (Bosler) who often informed your petitioner of certain facts which he would swear to, and which said facts would clearly prove that defendant knew that H. & G. disposed of their merchandise to him for the express purpose of cheating and defrauding their creditors; and petitioner after repeated efforts to discover other evidence to the said point was unable to do so before said trial; that if said Bosler had sworn to such facts, petitioner would have been able to sustain every issue on his part, but witness surprised him by swearing to a different state of facts, thereby leaving petitioner without evidence to prove defendant's knowledge; that petitioner was unable to discover any other evidence to supply the deficiency in his proof in season to avail himself of it on a motion for a new trial."

Petitioner further avers, that since said trial he and his attorneys have used every reasonable means to discover evidence proving said fraudulent knowledge, but did not succeed until the 17th of September, 1860, at which time another suit was on trial between the parties for other goods levied upon by petitioner as Sheriff, and included in the same sale from H. & G. to defendant, in which action the same issues were tried and the same proof introduced, and also the testimony of one Godfret Hattenback, who resides in said county, who was sworn on the part of petitioner and testified that since the said trial of the former suit defendant, in speaking of said alleged purchase, told him that he should get $2,000 out of the said stock of goods of H. & G.; that he was to get $2,000 for his trouble and services; that H. & G. were to get the balance, it belonging to them; that H. & G. told him, defendant, at the time of said pretended sale, that they were in debt, and the reason they wished to sell out to him was to prevent their creditors from collecting their demands; that thereupon in that action a verdict was rendered for petitioner; that he had no knowledge that that said witness would testify to said facts until that day; that said testimony is very important and material, and would change the result of the first trial; that he cannot produce the affidavit of said witness to said facts, because he refuses to make the same, but that he can prove them by said witness if a new trial is granted.

It is also stated that since the rendition of the judgment at law, it has been assigned by Hattenback to his co-respondent, Charles, but that this was done to cheat and defraud the creditors of Hattenback and without consideration.

To the bill there was a demurrer: *First.* Because the Court had no jurisdiction, for that a petition for a new trial under § 3116 of the Revision of 1860, " only applies to causes heard and determined since the passage of the statute." *Second.* If Charles is the assignee of the judgment,

he is presumed to be a *bona fide* holder of the same, and the contrary is not alleged. *Third.* The petition does not state facts to constitute a cause of action. "If for a new trial only, it is.not within the provisions of § 3116 of the Revision of 1860. If a bill in equity, to set aside a judgment at law, the allegations show no cause therefor."

Demurrer overruled, and a decree entered vacating the judgment and granting a new trial. Respondents appeal.

*Casady & Polk* for the appellants, contended: 1. That the cause in which the new trial was sought was, at the time this bill was filed, in the Supreme Court, on appeal, and that the District had, and could acquire no jurisdiction of the same, *McGlaughlin* v. *O'Rourke*, 12 Iowa, 459; 2. That the original suit was commenced under the Code of 1851, and § 3116 of the Rev. 1860, does not apply; 3. That the newly discovered evidence set out in the bill consists of admissions made by Hattenback, after judgment and after the assignment to Charles, and as against Charles such admissions are wholly immaterial, *Jones* v. *Jones et al.*, 13 Iowa, 276; Cow. & Hill's Notes to Phil. Ev., 1, 276; *Jackson, ex dem. Watson,* v. *Cris*, 11 John., 437; *Chess* v. *Chess*, 1 Penn. R., 32; *Bartlett* v. *Delprat*, 4 Mass., 702.

*Thos. F. Withrow*, with *Hudson & Joy*, for the appellees, argued that this was a proceeding in chancery to secure a new trial, under the well-established chancery jurisdiction to decree new trials in actions at law, and cited Adams Eq., 436; *Hoyd.* v. *Jayne*, 6 John. Ch., 481; Story's Eq. Jur., § 887; *Colyer* v. *Langfort's Administrator*, 1 A. K. Marsh., 1895 (*237); *Deputy* v. *Tobias*, 1 Blackf., 311; the opinion of SWAIN, J., in *Oliver and Baum* v. *Pray*, 4 Ohio, 191; *Gales* v. *Shipp*, 2 Bibb, 241.

WRIGHT, J.—By the Revision of 1860, § 3116, it is declared that the facts stated in the petition therein con-

templated shall be considered as denied without answer. As the court below, in this case, on overruling the demurrer, at once entered a decree ordering a new trial, it is manifest that the bill was treated as in equity, addressed to the chancellor, asking a new trial upon the ground of newly discovered evidence. And that this is its true character is but too evident from its substance and form. We may dismiss, therefore, the question made by the first ground of demurrer: Whether § 3116 applies to cases heard and determined before the taking effect of the Revision of 1860?

The second ground of demurrer is clearly based upon a misunderstanding of the record. All presumption that Charles occupies the position of a *bona fide* holder of this judgment is rebutted by the express averment that he paid no consideration for it.

Under the last cause of demurrer the more important questions are raised for our consideration. The language used is very general, and under it we can consider only such matters as strike at the substance of the bill. If there are only formal defects, or such as would not vitiate complainant's claim on the final hearing, we do not think they can be reached by this demurrer. By the Chancery practice, to say by demurrer, that there is "no equity in the bill," reaches all matters of substance and those only. If the objection is to the bill in point of form, the particular defects or objections must be stated. Story's Eq. Pl., § 455. The true inquiry in this case then is, whether, admitting the whole bill to be true, the court was justified in giving complainant the relief or assistance asked. If there is a mere want of due certainty in the allegations, or if the bill is loose and inartificial in its structure only, such defects are of form only and cannot now avail respondents. Assuming, therefore, that complainant should have stated more specifically the diligence used to obtain the desired evidence before the trial of the law action; that he should

have stated the facts showing such diligence and not his conclusions, we do not think the objection can be made under this demurrer. If the bill is true, and it is so taken, it is to be treated as though the testimony on the hearing established the ultimate fact that due and proper diligence had been used. And the same remark applies to some other objections now urged to the bill.

But does the bill show sufficient to authorize a court of equity to grant a new trial? The text-books and cases are full of learning upon this subject. Without, however, entering into the discussion, we state such general propositions as are necessary to the determination of the case before us.

In *Colyer* v. *Langfort's Administrator*, 1 A. K. Marsh., 174, it is said that: "In general, where it is proper for a court of law to grant a new trial, if the application is made while that Court has power to do so, it is equally proper for a court of equity to grant a new trial, if the application be made on grounds arising after the court of law had ceased to have power to do so." That case was not unlike this, and is sustained by *Deputy* v. *Tobias*, 1 Blackf., 311.

In *Balance* v. *Loomis*, 22 Ill., 82, WALKER, J., uses this language: "If it appears that the judgment complained of is unjust, and that the party in good faith has used, or attempted to use, all the means given him by law to assert his rights, by active efforts on his part, made in good faith and to the extent that a party has it in his power to use, but has, nevertheless, been prevented from presenting his defense to the claim, equity should grant a new trial at law." And see Story's Eq. Jur., § 887.

In this case the testimony of the witness referred to could not have been obtained at the time of the trial. It consists of declarations or admissions made by Hattenback long after that time. Of its materiality there can be no room

for doubt. As to its effect or weight, of course it is not for us to speak, further than to remark, that if the witness shall be credited by the jury, then according to the averments of the bill, complainant's defense would be complete and a different verdict would be found. Upon the whole, therefore, we are not inclined to interfere with the discretion exercised by the chancellor in ordering the new trial.

Affirmed.

The counsel for the appellant filed a petition for rehearing, which was considered by the court and overruled.