## MARTIN O. WALKER

*v.*

## GEORGE KRETSINGER *et al.*

1.  NEW TRIAL—*bill for*—*when granted.* A court of equity will not award a new trial at law, where the defense is a legal one and the party could have made it in a suit against him, unless he was prevented after the use of all means he could reasonably employ had failed, when he had been diligent and not guilty of *laches.*

2.  Where two partners were sued and one of them spoke to attorneys to defend the suit, but gave them no facts nor the names of witnesses by whom to establish a defense, they were not in a position to defend the suit, and when that partner died, and the other partner gave the matter no attention, and judgment was rendered against him by default: *Held,* that there was such a want of diligence and such *laches* as would prevent a court of equity from decreeing a new trial in such a case.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The facts in this case are fully presented in the opinion.

Messrs. JEWETT & JACKSON, for the appellant.

Messrs. JONES & GARDNER, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, commenced by appellant, in the Superior Court of the city of Chicago, for an injunction to stay the collection of a judgment in that court, and for a new trial at law in the case in which the judgment was obtained.

The bill alleges that, in the autumn of 1856, appellant and Guy H. Cutting were engaged in the wood and coal business;

that Cutting contracted with Hughes for dockage for their coal, and that it might remain on his dock until the 1st of May, 1867, at the rate of fifty cents per ton ; that they placed upon the dock about 500 tons of coal, which was removed in part, from time to time, until the 15th of May, 1867, at which time it had all been removed; that in the spring of 1867, appellant and Cutting purchased of Hughes 480½ cords of wood, then on the dock, with the agreement that it might so remain until the first of the next July, without charge; that subsequently to this purchase, Hughes leased the dock to appellees, to commence the 1st of May of that year, and they then took possession of the dock, but that when they took the lease they knew of the arrangement existing between Hughes and appellant and Cutting in reference to dockage ; that they afterwards came to the agent of appellant and Cutting, who was removing the coal from the dock, and requested that he would remove the wood first, instead of the coal, as they intended to build where it lay on the dock, and promised that if the wood should be so removed, the coal might remain on the dock until the 1st of July, 1867, being the time when the wood was to be removed; and that, solely for the accommodation of appellees, the wood was removed.

That afterwards, on the 25th of June, 1867, appellees commenced suit against appellant and Cutting, in the superior court, claiming $500 for the dockage of the coal; that service was had, and on the 11th of September following, a default was rendered in the case and judgment entered againt appellant for $350 and costs, and that execution had been issued for its collection.

That Cutting had the sole care and management of the wood and coal business; that all of the arrangements with Hughes were made by him ; that after the service of process, Cutting informed appellant that he had consulted attorneys in reference to a defense; that in August, before the judgment was rendered, Cutting died ; that complainant, relying upon what

Cutting had said, supposed that a proper defense had been made, until after the default, and when it was too late to have it set aside; alleges that he has paid the dockage to Hughes, and if compelled to pay this judgment he will have twice paid for the dockage; that he has applied to appellees, but they refuse to permit the judgment to be set aside.

The answer was filed without oath, it having been waived. Appellees admit that appellant and Cutting were in the coal and wood business; admit that Hughes was in possession of the dock, but deny any knowledge of any transactions between Hughes and appellant and Cutting; that the dock is owned by Evans, under whom Hughes held the same; that in March, 1867, appellees purchased Hughes' unexpired term, and on the 1st of April took from Evans a new lease; that they paid Hughes and went into possession on the 7th of March, at which time there was a large amount of wood and coal on the dock, which they supposed belonged to Hughes, and agreed, in relation thereto, that they would allow Hughes the free use of the portion occupied by them until the 1st of June, 1867, and free storage of coal then on the north end of the property until the 1st of April, 1867; the free use meaning the storage of wood and coal where it now is, and the opportunity of removing the same without charge.

They allege, that when appellant and Cutting commenced to remove the wood, they did request that a particular part might be first removed, but deny that they agreed that the coal might remain on the dock free of charge. They admit the death of Cutting. A replication was filed, a trial had, and on the hearing the court rendered a decree dismissing the bill.

The doctrine is well settled in equity, that when a party has a complete and adequate remedy at law, and fails, from any cause, to rely upon it in that forum, he will not be permitted to assert it in equity, unless he has been prevented, by accident, or such circumstances as he was unable to control.   Any *laches*

on his part in failing to assert his rights in a court of law, when called upon to do so, will prevent him from obtaining relief in equity. If it appears that the judgment complained of is unjust, and that the party, in good faith, has used, or endeavored to employ, the means given him by the law, to assert his rights, and has been active and vigilant in his efforts to make his defense, and is still prevented from presenting a meritorious defense, equity will grant a new trial at law. *Ballance* v. *Loomis*, 22 Ill. 82; *Adams* v. *Camp*, 3 Scam. 290; *State Bank* v. *Stanton*, 2 Gilm. 352. In this last case it was held that, if a bill contains allegations which show the complainant had a perfect remedy at law, and the bill fails to show a sufficient excuse for not pursuing his legal remedy, the bill should be dismissed for want of equity. The jurisdiction of the two courts is distinct, and a party has no right to transfer his claim to one or the other at his pleasure. He must resort to that tribunal which has jurisdiction, or, if it is concurrent, he must answer in that which first acquires jurisdiction of the case.

The bill shows, in this case, that the claim of appellant, if valid, was clearly a legal one, and that it could have been set up as a defense in the suit at law. Nor has appellant, by his bill, shown a sufficient excuse for not relying upon it in that action. He only shows that he relied upon his partner to make the defense, while he lived, and, after his death, upon attorneys he supposed his partner had employed. He does not pretend that he ever saw the attorneys, or used any means to prepare or present his defense. We do not see how any court could say that this constituted diligence. He was served with process, knew his partner had died, and yet neglects to do any act, or even to make the slightest inquiry, give himself the least concern about the defense, and permits judgment by default to be rendered against him, and was so wholly inattentive and careless of his rights that he was not aware

of the judgment until it was too late to have it set aside and a new trial granted.

But even if the allegations of the bill were sufficient to authorize a court to grant the relief, still they are not proved. One of his attorneys states that Cutting called upon him and requested that their firm should defend the suit; that he informed him that the declaration was not filed, and that it could not be tried before the August term, when Cutting promised to call again in a few days and put him in possession of the facts relied upon for a defense, but he never returned. Attorneys cannot defend suits unless they are informed of the nature of the defense, and the witnesses by whom it can be proved, and are not required to search for proof or witnesses for their clients. Even if this amounted to a retainer, it by no means constituted a preparation for a defense. And it nowhere appears that appellant was ever informed by Cutting that he had taken any steps to defend the suit. He alleges in his bill that such was the fact, but we fail to find the proof. It nowhere appears that he inquired what his partner had done beyond the employment of counsel.

We can perceive no element of diligence in the endeavor to present the defense in the suit at law. On the other hand, appellant seems to have been guilty of *laches*, almost, if not altogether, to an extent that implies entire indifference to whether the defence was made at law.

We are, for these reasons, of the opinion that the decree of the court below must be affirmed.

*Decree affirmed.*