MERRITT E. BRADLEY *et al.*

*v.*

BENJAMIN C. LUCE *et al.*

*Filed at Ottawa May 14, 1881.*

1. FRAUD—*as a ground of rescission.* A party procured a conveyance of valuable lands for 170 shares of stock in a lumber company, which he represented to be worth eighty-five cents on the dollar, or $14,460 in gross, and notes to the amount of $12,630, secured by mortgage on 100 acres of land in Michigan, which land he represented as having been sold for $20,-000, all of which had been paid, except the sums secured by the notes, and

also that the makers of the notes were wealthy men. The grantor relied on such representations, which proved to be false, and were known by the purchaser to be untrue when made, it appearing that the lumber company was insolvent and the stock worthless, and the Michigan land worth but a small amount, and the mortgagors of the same had paid nothing on the price, and were poor men: *Held,* the facts sustained a finding, on bill to set aside the conveyance, that the deed was obtained by fraud and false representation.

2. PURCHASER—*when protected against equity.* A person who loans money and takes a mortgage or deed of trust to secure the loan on land, without notice of any equity in a third person in the premises, the record showing title in the mortgagor, will be protected against the right of one to have the mortgagor's title set aside.

3. SAME—*when not affected by pendency of suit.* A bill to set aside a conveyance of land for fraud on the part of the grantee, which can only be done subject to the rights of a subsequent incumbrancer, who had acquired a lien on the land in good faith, without notice of the fraud, will not affect a title acquired under the incumbrance, and a purchaser may safely acquire such title, notwithstanding the pendency of such bill.

4. The amendment of a bill by the introduction of new matter disconnected with the original, can not affect any one as *lis pendens* until allowed and filed. It can not relate back to the date of the filing of the original bill.

5. SAME—*must show good faith as against equitable rights.* Where a party, after having procured a conveyance of land to him through fraud, conveyed the same to a third person, and the latter on the same day conveyed to the wife of the former, and another person having acquired the title to the land under a sale under a deed of trust for the benefit and in trust for the original owner, conveyed the same to certain other parties to secure a debt due them, with the understanding the balance was to go to the wife of the fraudulent grantee: *Held,* on bill by the original owner, that the proceeds of the land to be paid over to the wife of the fraudulent grantee might be reached, as there was no evidence she was a purchaser in good faith.

6. TRUST—*when it arises.* If A acquires the title to land under an agreement with B that he will purchase notes secured by deed of trust on the premises, and foreclose the trust deed, and convey the same to B upon B's paying him the amount advanced to acquire the title, and certain other indebtedness from B to A, he will hold the premises in trust for B, and can not in equity appropriate the property to himself, or convey it to another having notice of B's rights. If he conveys any part of it to one having no notice of B's equities, he may be required to account to B for its value.

7. SAME—*party enforcing must pay what he agreed to pay.* Where A purchases a note secured by a deed of trust on land, has a sale made, and bids in the land with the approbation and consent of B, under an agreement that A

shall hold the property until he is paid the advance made and a debt due him from B, and then to convey it to him, A will be entitled to receive not only what he paid for the land, but also the other sum B owes him, before he will be divested of his title or claim.

8. SAME—*trustee accountable for property conveyed.* Where a person holding land in trust for another, in violation of the trust conveys a portion of the same to a third person to secure a debt due him, he will be required to account for so much of the land conveyed as shall be necessary to pay the claim of the third person, or if such person has sold all the land conveyed to him to another, who buys in good faith and without notice of the equities of the *cestui que trust,* then such trustee will be required to account for the value of all the land conveyed by him.

9. NOTICE—*possession as notice of claim.* Where one occupies land under a tenant of another, his occupancy will afford no notice of any claim he may have to the same.

10. ESTOPPEL—*by party's acts.* A party who procures another to purchase land under a deed of trust, and is present at the trustee's sale, and makes no objection to the same, or sets up any claim to the land, will be estopped from denying the validity of such sale. In such case if he has a suit pending in equity to set aside a conveyance made by him to the grantor in the trust deed, it will not be allowed to affect the purchaser as notice by *lis pendens.*

11. JUDICIAL SALE—*en masse for inadequate price.* While inadequacy of price alone on an execution sale may not be ground for equitable relief, yet when, in addition to inadequacy of price, irregularities in the sale occur, such as selling several tracts or lots of land in gross, without first offering them separately, equity will interfere and vacate the sale. In this case over 500 acres of land, worth $25,000 to $30,000, were sold *en masse* for $704.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. CHARLES KELLUM, Judge, presiding.

On the 12th day of April, 1870, Benjamin C. Luce, defendant in error, being the owner of a farm in Lake county, consisting of 544 acres, sold to William Darby 188 acres of the place for $8186, payable, $3000 January 1, 1872, $3000 April 22, 1873, and $2186 April 22, 1874. These notes were secured by a mortgage given by Darby on the land so purchased. The balance of the farm Luce occupied until the spring of 1872, when he leased his farm to one William Ruth, for the term of three years, and moved to the city of Chicago. In the fall of 1872 he fell in with Merrit E. Bradley, one

of the plaintiffs in error, who was a real estate dealer in the city of Chicago, and to whom Luce went, as he says, to engage him to sell the farm in question. Bradley examined the farm and proposed to buy it, but wanted it for less than $60 per acre, the price at which it was held by Luce. After some negotiations a trade was agreed upon between Luce and Bradley, in which Luce sold Bradley the farm, the notes and mortgage on Darby, and a quantity of stock, farming implements and grain on the farm, all amounting to something over $30,000, for the property. Bradley agreed to convey Luce certain lots in Irving Park, being 900 to 1000 feet front, which were valued by Bradley at $30 per foot. Subsequently it turned out that Bradley had no title to the Irving Park property, or at least could not make Luce a title to the property, and another arrangement was entered into between the parties, under which Bradley agreed to give Luce for the property, cash, $3000; 170 shares of stock of the St. Louis and Wisconsin River Lumber Company, represented by Bradley to be worth $14,450; four notes executed by Charles Walters, three for $2000 each and one for $1630, with ten per cent interest thereon, amounting to $7630, secured by mortgage on one-half of 100 acres of land in the county of Allegan, Mich.; and two notes of $2500 each, executed by one George A. Allen, amounting then to $5000, secured by mortgage on the other half of said 100-acre tract of land. In addition to this, Bradley agreed to assume and pay a note of $3000, given by Luce to one James Wells, and secured by mortgage on the farm owned by Luce. Under this arrangement Luce and his wife, on the 14th day of November, 1872, executed and delivered to Bradley a deed for the farm, and also transferred to him the Darby notes and mortgage. Bradley turned over the Darby notes and mortgage to Benjamin L. Pease, and obtained from him a loan of $3000, which he paid over to Luce. On the 27th day of November, 1872, Bradley, with the consent of Pease, surrendered the Darby notes and mortgage to Darby, in consideration of

which Darby and his wife conveyed to Bradley the 188 acres of land which Luce had formerly sold to Darby. On the day following, Bradley, through Benjamin L. Pease, obtained a loan of one Hiram Barker, of $6000, and to secure the payment of the principal and interest he executed a deed of trust on the land Luce had conveyed, as well as the land Darby had deeded to him. Bradley paid off the James Wells mortgage, which he had agreed to assume, with $3000 of this money.

At the time Luce delivered his deed for the farm to Bradley, the latter did not turn over the notes against Walters and Allen, secured by the mortgages on the Michigan lands. Bradley represented that the mortgages were then sent for record, and he would deliver the notes and mortgages, with an abstract of title, in a short time. In the meantime, however, he left with Luce 200 shares of St. Louis and Wisconsin River Lumber Company stock, in addition to the 170 shares that he had sold Luce, as collateral security to the Michigan notes and mortgages. The abstracts of title for the Michigan lands not having been furnished by Bradley, Luce became somewhat dissatisfied, and upon making inquiry he became satisfied that the lumber company stock was of little or no value, and that the parties who had executed the Michigan mortgages were insolvent, and the lands embraced in the mortgages were worth but a small amount, and that the representations made by Bradley in regard to the stock and mortgages were false.

Under these circumstances, on the 18th day of December, 1872, Luce filed a bill in equity, in the circuit court of Lake county, against Bradley, to set aside the deed he had made and cancel the contract, on the ground of fraud and imposition.

Prior to the filing of the bill, however, and on the 14th day of December, 1872, Bradley and his wife deeded the property to one Oliver S. Lincoln, and he conveyed to Mrs. Bradley, but these deeds were not recorded until June 1,

1874. Bradley having failed to pay the interest as it became due, on the trust deed given to Barker to secure the loan of $6000, Henry M. Wells, plaintiff in error, purchased the notes secured by the trust deed, and caused the trustee to advertise and sell the whole farm, and at the sale Wells became the purchaser for $5500, and received a deed for the premises.

Afterwards, and on the 22d day of June, 1874, Mrs. Bradley filed her bill against the trustee and Wells, to set aside the sale. Subsequently this case came on for a hearing before one of the judges of the circuit court of Cook county, and after hearing the evidence he decided that the sale had not been advertised in such a newspaper as the law requires, and that the sale had been fraudulently made, and directed that a decree be prepared to set aside the sale. No decree was, however, prepared or signed, but in a short time Mrs. Bradley and Wells had an interview, which resulted in an arrangement that the bill should be dismissed at plaintiff's costs, that Mrs. Bradley should deed the property to one Charles B. McCoy, and that he should deed 200 acres of the property to Wells, and that Wells should convey the balance to McCoy, which was accordingly done. Subsequently Mc-Coy conveyed to Mrs. A. E. Kent, of California, who brought ejectment to recover possession of the property. In the meantime Luce filed an amended bill, his original bill not having been heard, and obtained an injunction, and on the hearing a decree was rendered in his favor, and the defendants therein prosecute this writ of error.

Messrs. TENNEY & FLOWER, for the plaintiffs in error:

A mortgagee, in equity, is regarded in the light of a purchaser. 2 Washb. on Real Prop. 90; *Clark* v. *Hunt*, 3 J. J. Marsh. 557; *Wood* v. *Bank of Kentucky*, 5 Mon. 194.

A purchaser in ignorance of any fraud, for a valuable consideration, will be protected. 1 Story's Eq. Jur. secs. 434 and 381; 3 Washb. on Real Prop. 299; *Dennis* v. *McCagg et al.* 32 Ill. 429; *Gavagan* v. *Bryant*, 83 id. 380.

Pease, being an innocent purchaser, had a right to sell to anybody he could trade with. *Brandlyn* v. *Ord*, 1 Atk. 571; *Lowther* v. *Carlton*, 2 id. 242; *Sweet* v. *Southcote*, 2 Brown Ch. 55; *Bumpus* v. *Platner*, 1 Johns. Ch. 213; *Moore et al.* v. *Hunter et al.* 1 Gilm. 330; *Peck* v. *Arehart*, 95 Ill. 117; *Boone* v. *Chiles*, 10 Pet. 178; *Trull* v. *Bigelow*, 16 Mass. 418; *Boynton* v. *Reeves*, 8 Pick. 332; *Hogthorp* v. *Hook*, 1 Gill & J. 273.

The complainant is estopped from attacking the Pease title, now held by defendants. *Waughop* v. *Week et al.* 23 Ill. 350; *Anderson* v. *Armstead*, 69 id. 452; *Knœbel* v. *Kircher*, 33 id. 308; *Kinnear* v. *Mackey*, 85 id. 96; *Noble* v. *Chrisman*, 88 id. 198; *Higgins* v. *Ferguson et al.* 14 id. 269.

The court erred in setting aside the deed from Henry M. Wells to Charles B. McCoy, securing the claim of McCoy & Pratt, they not being parties to the suit. *Herrington* v. *Hubbard*, 1 Scam. 569; Adams Eq. 472; *Hopkins et al.* v. *Roseclare Lead Co.* 72 Ill. 373; *Atkins* v. *Billings*, id. 597.

The court erred in setting aside the sheriff's deed to Ellen A. Ball, conveying the premises. *Stevens* v. *Hollingsworth et al.* 74 Ill. 212; *Leopold* v. *Krause*, 95 id. 440.

Mr. GEO. F. HŒFFER, for the defendants in error:

In setting up a *bona fide* purchase, the party must state the deed, the date, parties, and contents, briefly;—that the vendor was seized in fee and in possession, and the consideration must be stated, with a distinct averment that it was *bona fide* and truly paid, independent of the recital in the deed, and notice must be denied. *Boone* v. *Chiles*, 10 Pet. 178; *Metropolitan Bank* v. *Godfrey*, 23 Ill. 606.

Possession of premises is notice to a purchaser of the possessor's title, both legal and *equitable*. *Daniels* v. *Davidson*, 16 Ves. 524; *Jackson* v. *Post*, 9 Cow. 120; *Tuttle* v. *Jackson*, 6 Wend. 213.

*Lis pendens* is notice as to the property described in the proceedings. *Green* v. *Slayter*, 4 Johns. Ch. 38; *Miller* v. *Sherry*, 2 Wall. 237.

And applies to purchasers from a party to the suit of the thing in controversy. *Hopkins* v. *McLaren,* 4 Cow. 678; *Parks* v. *Jackson,* 11 Wend. 442; *Cole* v. *Lake Co.* 54 N. H. 272; *Jackson* v. *Warren,* 32 Ill. 340; Adams' Eq. 157.

To constitute an equitable estoppel there must be a representation, or concealment, of *material* facts, and the representation must be made with a *knowledge* of the facts, and with the intention that the other party shall act upon it. The party to whom it is made must have been ignorant of the truth of the matter, and have been induced to act upon it, and there must have been a *fraudulent purpose* and a *fraudulent result.* *Dozell* v. *Odell,* 3 Hill, 219; *Stevens* v. *Dennett,* 51 N. H. 324; *Martin* v. *Zellerbach,* 38 Cal. 300; *Baggs* v. *Merced Co.* 14 id. 367; *Davidson* v. *Young,* 38 Ill. 152; *People* v. *Brown,* 67 id. 435; *Ruard* v. *Gardner,* 39 id. 125; Bigelow on Estoppel, 437; 3 Washb. 80; Story's Eq. (Redfield's ed.) sec. 1543.

Silence as to that of which one has a right to presume the other party has notice, will not work an estoppel. *Rice* v. *Dewey,* 54 Barb. 455; *Bales* v. *Perry,* 51 Mo. 449; *Shaw* v. *Spencer,* 100 Mass. 382; *Taylor* v. *Ely,* 25 Conn. 250; *Watson* v. *Knight,* 44 Ala. 352.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The record contains some evidence tending to prove that the original arrangement to trade the Irving Park property for the Luce farm, personal property, and Darby notes, was consummated; but the decided preponderance of the evidence is, that the proposition to trade the Irving Park property was abandoned, for the reason Bradley was unable to make a title, and that the consideration agreed to be given for the farm, personal property and the Darby notes, was, cash $3000, the St. Louis and Wisconsin River Lumber Company stock, and the notes secured by mortgage on the Michigan lands, and the assumption of the Wells mortgage on the farm by Bradley, amounting to $3000. The court, in

its decree, found that Bradley obtained a conveyance of the farm from Luce by fraud, and the deed of November 14, 1872, was set aside.

It is apparent, from the evidence, that Bradley represented the lumber company stock to be worth eighty-five cents on the dollar; that the company owned extensive lands on the Wisconsin river, mills, booms for logs; that it controlled Wisconsin river trade, etc.; that the notes secured by mortgage on the Michigan land were given by wealthy men, (Allen and Walters) in Chicago; that he had sold the 100 acres of land for $20,000; that the purchase money had all been paid except the notes; that the makers of the notes were well able to meet them at maturity. Luce relied upon the truth of these representations, and acted upon them in making the trade with Bradley, without investigation in regard to their truth.

It is clear, from the evidence, that the representations in regard to the lumber company stock, were entirely false,—that the company was insolvent and the stock worthless. As regards Allen and Walters, who were represented as wealthy men in Chicago, it turned out that while they were honest, they were both poor men, working as hostlers in livery stables in Chicago; that they had paid nothing on the land purchased, and were wholly unable to pay anything on the mortgages; that the land embraced in the mortgages, instead of being worth $20,000, was not worth more than $2000 to $2500.

It is apparent, from the evidence, that the representations in regard to this lumber stock and the notes secured by mortgage on the Michigan land were false, and known to be so when made. In so far, then, as the finding of the court is concerned, that the transfer of the property from Luce to Bradley was obtained by false representations and fraud, we think it is fully sustained by the evidence in the record.

But it is contended, that although the sale from Luce to Bradley may be impeached for fraud, yet as Barker, who took

a mortgage on the property, was an innocent purchaser, he and those claiming title by virtue of the sale under his trust deed are entitled to be protected.

On the 28th day of November, 1872, the time when Bradley made the trust deed to Pease, to secure the $6000 loan from Barker, the title to the property appeared by the record to be in Bradley, and there was nothing to apprise Barker, or Pease, his agent, that Luce had any interest in the land whatever. The circumstances under which Bradley acquired the title to the land were unknown to Barker, and so far as he is concerned, having loaned the money and received the deed of trust in good faith, without notice of Luce's equities, he of course would be entitled to protection.

Henry M. Wells purchased the notes secured by the deed of trust of Hiram Barker, in 1874, foreclosed the deed of trust, and at the trustee's sale, May 26, 1874, bid in the property in his own name, and received a deed from the trustee, and it is contended that under the deed thus acquired he was entitled to hold the property, or transfer the title to others, who would be entitled to hold it as against all claims of the complainant in the bill. Had Wells become a purchaser at the sale under the trust deed without any understanding, arrangement or agreement between him and the complainant Luce, doubtless he might hold the title to the property. But such was not the case. On the other hand, it appears, from the evidence, that Wells agreed with Luce to purchase the notes secured by deed of trust from Hiram Barker, foreclose the deed of trust, and convey the title acquired to Luce upon the payment by Luce of the money Wells should advance on the purchase of the deed of trust, and such other sums of money as were then due and owing from Luce to Wells. If Wells acquired the title to the property under such an agreement, he then held it in trust for Luce, and he could not in equity appropriate the property to himself, or convey it to another who had notice of the rights of Luce. Wells was a mere trustee, and when Luce was ready and willing to pay the amounts agreed upon,

he was bound to convey to Luce the title he had acquired under the agreement. When Wells acquired the title to the property, under a special agreement entered into between him and Luce, equity requires him to abide by and perform his contract.

It is next urged that the court erred in setting aside the deed from Henry M. Wells to Chas. B. McCoy, by which 300 acres of the land were conveyed to him. This conveyance was made in pursuance of an arrangement made between Wells and Mrs. Bradley, under which she dismissed her suit which was brought to set aside the sale under the Barker deed of trust, and Wells was to have 200 acres of the land, and she was to have the balance.

It appears, from the evidence, that McCoy & Pratt had a claim against M. E. Bradley for services rendered and for money advanced, amounting to $1500 or $2000. This claim was assumed by Mrs. Bradley. McCoy & Pratt also had an account against Mrs. Bradley. In order to secure these claims the property was deeded to Chas. B. McCoy, in trust, who was to make sale of the property, and pay first, McCoy & Pratt, and the balance was to be paid over to Mrs. Bradley. If McCoy & Pratt, at the time Wells executed and delivered the deed, had notice of the equities of complainant Luce in the premises, they would not be entitled to protection. But such was not the case. The testimony fails to show that they had any knowledge whatever of the existence of the contract between Wells and Luce, under which Wells had agreed to convey to Luce the premises upon payment of the amount that was due from the former to the latter. Wells, upon buying the land at the trustee's sale, leased it to Orrin Luce, who occupied it as his tenant from that time down to the date of the conveyance from Wells to McCoy. It is true, the complainant Luce was also living on the land, but the testimony shows that he occupied under Orrin Luce, and hence was a tenant of Wells. Under such circumstances, his occupancy of the land was no notice that he claimed title to the premises.

It is also true that Luce had a bill in equity pending against Bradley, to set aside the deed he had made to him for the land, but the pendency of that bill could not affect the purchase made by McCoy, for the reason the bill did not seek to set aside the title Wells had obtained under the Barker deed of trust,—its object was only to vacate the deed made to Bradley.

Again, it will be remembered that Wells purchased the Barker deed of trust, and had the land sold under it, and bid it in at the instance and request of Luce, who was present at the sale and interposed no objection. Under such circumstances he is estopped from denying the validity of the sale.

The doctrine of *lis pendens* can have no application to the facts of this case. The deed of trust to Barker was given by Bradley for money loaned, while the record showed a perfect title to the lands standing in his name. Luce had not then instituted his suit against Bradley. Under such circumstances, while Luce might in the end set aside the deed made by him to Bradley, he could only do so subject to the rights of all subsequent purchasers or incumbrancers who had acquired liens on the land in good faith. Such was the Barker deed of trust. Now, when the deed was made to McCoy by Wells, he and those for whose benefit the deed was made were bound to take notice of the scope and effect of Luce's bill, which was then pending; but as the bill could not reach a title acquired under the deed of trust, and as the title Wells held was derived from a sale under that deed of trust, they could safely acquire title from Wells. It is true, that after McCoy obtained a deed from Wells, complainant Luce amended his bill, and set up the contract between him and Wells in regard to the land. But this amendment could only be notice or binding as a *lis pendens* from the time it was made,—it could not relate back to the time of filing the original bill. Freeman on Judgments, sec. 199. The original bill would be notice of every fact contained in the pleadings, but this amendment was new matter, disconnected in

any manner with the original bill, and could not be a binding *lis pendens* until it was filed and allowed as an amendment to the original bill by the court. It was in effect a new bill, and can only be regarded as notice to purchasers from the time it was incorporated in the original bill.

We are, therefore, of opinion that the deed to McCoy should be sustained, in so far as the claims of McCoy & Pratt are concerned. But as the balance of the proceeds of the land, after the payment of McCoy & Pratt, were to be paid over to Mrs. Bradley, this may be reached, as there is no evidence that she is a purchaser in good faith without notice. The conveyance of all the land December 14, 1872, from Bradley to Lincoln, and on the same day from Lincoln to Mrs. Bradley, was doubtless without consideration, and done to shift the title to the property from the husband to the wife.

It is also insisted, that the court erred in finding only the sum of $10,423.46 in favor of Henry M. Wells. This error is well assigned. The complainant, in his supplemental bill, alleged : " That soon after Mr. Bradley commenced suit to set aside said sale, Wells called upon Benj. C. Luce, and proposed to him that if your orators would allow their suit, commenced December 5, 1872, to remain undisposed of till suit of· Mrs. Bradley against Wells and Pease should be tried, so that no question should be decided in said cause as to validity of said trust deed, that if said sale was sustained and Wells successful he would convey said lands, and his interest acquired under said sale, to Benj. C. Luce, your orator, Benj. C. Luce paying him the amount of indebtedness due from your orator to him, and such sum as he had paid for said trust deed, so as to give to your orator the benefit of any right which he should acquire in said suit, or had acquired under said trust deed sale, your orator paying such indebtedness. Your orator, after consultation with his solicitor, and because of insolvency of said Bradley and expenses of litigating said suit, they being already very great, your orator's means being

limited, and that the title of record appeared in M. E. Brad-
ley at time of making said trust deed (orator's said bill not
having then been filed), and expense necessary to show that
Pease had knowledge of fraud of Bradley in getting said
title from your orators, and his understanding with said
Wells before purchase of said indebtedness secured by said
trust deed, consented to the proposition of said Wells, and has
permitted his said cause to be continued from time to time,
and in addition thereto your orator, Benj. C. Luce, has, from
time to time during the pendency of said suit, assisted said
Wells in his said defence, believing if Wells was successful
that your orators, through him, under said agreement, could
regain title to said lands cheaper than to go on with orator's
said suit."

This allegation is followed by proof that shows that Wells
was to be paid the mortgage debt, and also such other amount
as Luce then owed him, before he should be required to
convey the land to Luce. This agreement was made between
Luce and Wells before the property was sold on the deed of
trust. It was the contract under which Wells purchased the
land, and he can not be deprived of the title to the lands
until he is paid the amount paid for the Barker note and
deed of trust, and interest thereon, together with the amount
of the other indebtedness due from Luce to him at the time
the arrangement was made.

This last indebtedness consists of four notes, one from
Luce to Wells, which, on May 26, 1874, amounted, as the
evidence shows, to $4520. No part of this was taken into
account by the court in fixing the amount that should be paid
to Wells, but the court decided merely that Wells should be
paid the amount which he had paid for the Barker note, and
interest, amounting, at date of decree, to $10,423.46. This
was error. In addition to that amount, the four notes, and
such interest as had accrued, computing the same from the
time interest commenced running to date of decree, should
have been allowed. Wells purchased the Barker note at the

instance and request of Luce, and made the sale and bid in the property with his approbation and consent, on the understanding that he should hold the property until he was paid the advance made and a debt due from Wells to him. Under such circumstances, although Wells' subsequent conduct in relation to the property was not altogether commendable, yet equity will not aid Luce in obtaining the title to the property from Wells without a compliance on his part with the spirit of the contract under which Wells obtained it. But as Wells has conveyed a portion of the land to McCoy, in violation of his agreement with Luce, he must account for the value of the land conveyed. We are, therefore, of opinion that Wells should be required to account for so much of the land conveyed as shall be necessary to pay the claim of McCoy & Pratt, and if, on another hearing, it turns out that McCoy has sold all of the land deeded to him by Wells, to a purchaser who bought in good faith, without notice of the equities of Luce under the contract made between him and Wells, then Wells should account for the value of all the land he conveyed, less so much as may be found in the hands of the trustee, and received from him.

It is also claimed, that the court erred in setting aside the deed from the sheriff of Lake county to Ellen E. Ball, conveying the premises to her. This deed was made in pursuance of a sale of the premises by the sheriff of Lake county, on an execution issued on a judgment rendered in 1875, in favor of Turner & Ray, against Luce. Ellen E. Ball came in and filed an intervening petition, in which she set up that she was the owner of the premises under the sheriff's deed. It appears that the court set the deed aside, on the ground that the premises, at the time of the sale, were the homestead of Luce, and, as such, were not liable to levy and sale.

We shall not stop to determine whether the reason assigned by the court for setting aside the deed was the correct one or not. It will be sufficient if the court did not err in setting aside the sale. The land sold was worth from $25,000 to

$30,000, and consisted of over 500 acres, and was sold in gross, and bid off for the sum of $704. Now, while inadequacy of price alone, on an execution sale, may not be ground for equitable relief, yet where, in addition to inadequacy of price, irregularities in the sale occur, such as selling several tracts or lots of land in gross, without first offering them separately, equity will interfere and vacate the sale. *Morris* v. *Robey*, 73 Ill. 462. Here the land was capable of division, and had a small portion been offered it might have brought the debt; but whether it would or not, it was the duty of the officer to offer the land in parcels, and a sale of so large a tract for so small a sum of money, where no effort has been made to sell in parcels, can not be sustained.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings in conformity to this opinion.

*Decree reversed.*