GEORGE BERRY *et al.*

*v.*

HENRY LOVI.

*Filed at Ottawa November 20, 1883.*

1. NOTICE—*by possession.* Where an attachment is levied upon, and becomes a lien on land before its conveyance by the owner, and a purchaser takes actual possession of the premises before judgment in the attachment suit, which is continued, and the property is purchased by the plaintiff in the attachment, who assigns his certificate of purchase to one who again assigns the same to another, who takes out a sheriff's deed, there will be involved no rights of innocent purchasers, and the parties so acquiring the certificate of purchase by assignment having notice of the equities of the party in possession, will have the same, but no greater, rights than the original purchaser at the sheriff's sale.

2. JUDICIAL SALE—*what is inadequacy of price.* Where lots worth $8000 are sold for $65.38, the amount of the sale is grossly inadequate.

3. SAME—*when set aside for inadequacy of price.* Judicial sales will not be set aside for mere inadequacy of price, unless it is so gross as to amount to a fraud.

4. SAME—*sale en masse for inadequate price.* Where two separate lots, of the value of $8000, are sold on execution for $65, *en masse,* without first offering them separately, a court of equity will interpose, if invoked in a reasonable time, and set the sale aside.

5. LACHES—*excuse for delay in filing bill to set aside a sale.* Where a purchaser of lots was aware of an attachment against them at the time of his purchase, but was assured by the agent of his grantor that he would take care of the matter, and he was afterwards, and within the time of redemption, shown an abstract containing a memorandum that the judgment was fully satisfied by the return of execution, from which he was led to believe that the judgment had been satisfied by payment, instead of by sale of the lots, which belief was strengthened by the conduct of the purchaser at the sheriff's sale, and those claiming under him, in not taking out and recording a sheriff's deed for several years, it was *held,* that a delay of five years in filing a bill to set aside the sale was not a bar to equitable relief.

6. EXECUTION—*must be delivered to officer in its lifetime.* A sheriff has no right to proceed under an execution unless it comes to his hands within ninety days from the time it was issued.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. CONSIDER H. WILLETT, for the appellants:

The statutes declare that a sheriff's deed shall be void if not issued within five years from the last day of redemption, saying nothing whatever about recording it. The decree is erroneous in holding that "issuing" includes "recording." Rev. Stat. chap. 77, sec. 30; *Ryhiner* v. *Frank,* 105 Ill. 326; *Rucker* v. *Dooley,* 49 id. 377.

No levy was necessary after the levying of the original attachment writ. Freeman on Executions, sec. 289; *Tyrell* v. *Roundtree,* 7 Pet. 464; *Lofland* v. *Ewing,* 5 Litt. 42; Rorer on Judicial Sales, sec. 576; 3 Bacon's Abridg. "Execution," 734; *Caines* v. *Clark,* 1 Bibb, 608; *Barnard* v. *Stephens,* 2 Ark. 429; *Tullies* v. *Brawley,* 3 Minn. 283; *Rhorer* v. *Terrill,* 4 id. 407; *Folsom* v. *Carli,* 5 id. 333; *Gregory* v. *Thadwell,* 3 Cold: (Tenn.) 390; *Wight* v. *Wallbaum,* 39 Ill. 554.

Inadequacy of price alone is not a sufficient cause to set aside a judicial sale. *Morris* v. *Bishop of Durham,* 1 Ves. 57;

*White* v. *Damon,* 7 id. 30; *Coles* v. *Tretharick,* 9 id. 234; *Ayres* v. *Baumgarten,* 15 Ill. 444; *Livingston* v. *Byrne,* 11 Johns. 556; *Tripp* v. *Cook,* 26 Wend. 143; *Williamson* v. *Dale,* 3 Johns. Ch. 90; *Dickerman* v. *Burgess,* 20 Ill. 267; *Garrett* v. *Moss,* id. 549; *Noyes* v. *True,* 23 id. 503; *Sowards* v. *Pritchett,* 37 id. 521; *Dutcher* v. *Leake,* 44 id. 398; *Hamilton* v. *Quimby,* 46 id. 96; *McMullen* v. *Gable,* 47 id. 69; *Comstock* v. *Purple,* 49 id. 159; *Duncan* v. *Sanders,* 50 id. 475; *Mixer* v. *Sibley,* 53 id. 61; *Pickering* v. *Driggers,* 59 id. 65; *Gibbons* v. *Bressler,* 61 id. 110; *Heberer* v. *Heberer,* 67 id. 253; *Watt* v. *McGalliard,* id. 513; *Thomas* v. *Hebenstreit,* 68 id. 118; *Morris* v. *Robey,* 73 id. 462; *Phelps* v. *Conover,* 25 id. 312; *Davis* v. *Dressback,* 81 id. 293; *Allen* v. *Sheppard,* 87 id. 314; *Reade* v. *Brooks,* 3 Lit. (Ky.) 127.

The *laches* of complainant is such as to bar him from obtaining the relief he seeks. *Heath* v. *Jones,* 12 Bradw. 493; *Clark* v. *Ewing,* 93 Ill. 572; *Kern* v. *Strasberger,* 71 id. 413; *Winchester* v. *Grosvener,* 48 id. 517; *Smith* v. *Powell,* 50 id. 21; *Albro* v. *Dayton,* 28 id. 325; *Yates* v. *Monroe,* 13 id. 219; *Noyes* v. *True,* 23 id. 503; *Fergus* v. *Woodworth,* 44 id. 374; *Roberts* v. *Fleming,* 53 id. 201; *Pickering* v. *Driggers,* 59 id. 65; *Morris* v. *Robey,* 73 id. 462; *Hay* v. *Baugh,* 77 id. 500; *Williams* v. *Rhodes,* 81 id. 571; *Boyce* v. *Hampton,* 16 Nev. 33; *Rigney* v. *Small,* 60 Ill. 416; *Watt* v. *McGalliard,* 67 id. 517.

Messrs. BOOTH & BOOTH, for the appellee:

It is the doctrine of this court that judicial sales will not be disturbed for mere inadequacy of price, unless so gross as to amount to a fraud, recognizing the fact that fraud may be implied from gross inadequacy of price alone. *Hamilton* v. *Quimby,* 46 Ill. 96; *Roseman et al.* v. *Miller,* 84 id. 299; *Comstock* v. *People,* 49 id. 158; *Duncan et al.* v. *Sanders et al.* 50 id. 476; *Heberer* v. *Heberer,* 67 id. 255; *Cook* v. *Jenkins,* 30 Iowa, 452.

As to the nature of the irregularities in a judicial sale, which, in connection with inadequacy of price, will afford ground for equitable relief, we cite the following cases in addition to those already referred to: *Day* v. *Graham,* 1 Gilm. 435; *Cowen* v. *Underwood et al.* 16 Ill. 22; *Dickerman* v. *Burgess,* 20 id. 267; *Garrett* v. *Moss,* 20 id. 549; *Ballance* v. *Loomis et al.* 22 id. 82; *Phelps* v. *Conover,* 25 id. 272; *Sowards* v. *Pritchett,* 37 id. 521; *Dutcher* v. *Leake,* 44 id. 398; *McLean County Bank et al.* v. *Flagg,* 31 id. 290; *Mathison* v. *Prescott,* 86 id. 493; *Bradley et al.* v. *Luce et al.* 99 id. 234; *Cassidy* v. *Cook et al.* id. 385; *Morris* v. *Robey,* 73 id. 462.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in the circuit court of Cook county, brought by Henry Lovi, against George Berry, James H. Keeler and Alfred Jackson, to set aside a sheriff's sale on two certain lots in Chicago, and for leave to redeem from such sale. The lots Nos. 76 and 77, of Hayes, Shelley & McGoffin's subdivision of block 46, and trustees' subdivision of section 7, township 39 north, range 14 east, were originally owned by one Edward Hall, of Philadelphia, Pennsylvania. On the 25th day of April, 1873, Hall sold and conveyed the lots to Stephen Palmer, for $8000. On the 7th day of January, 1874, Palmer sold and conveyed the lots to Henry Lovi for the same price he had paid. Lovi, upon making the purchase, took possession of the property, made improvements thereon, and has continued in the possession ever since. On the 9th day of April, 1873, one Keeler, a real estate agent in Chicago, brought an action of attachment against Hall, to recover $250 for his services in finding a purchaser for the premises. The attachment was levied upon these lots. Subsequently a trial was had, which, on May 16, 1874, resulted in a judgment in favor of the plaintiff, Keeler, for $50. On the 10th day of October, 1874, a special execution issued on the judgment, under which the lots were sold on the 5th day

of February, 1875, to Keeler, for the sum of $65.38,—the amount of judgment and costs. On the 1st day of March, 1875, Keeler assigned his certificate of purchase to Alfred A. Jackson, who, on the 21st of June, 1879, obtained a sheriff's deed, which was recorded May 16, 1881. May 9, 1881, Jackson conveyed to Berry, who recorded his deed May 15, 1881. Soon after the recording of the deeds an action of forcible detainer was brought to obtain possession of the lots, and Henry Lovi filed this bill to enjoin the prosecution of the suit, and to set aside the sheriff's sale and the subsequent deeds purporting to convey that title to Berry.

There are no rights of innocent purchasers involved in this case. As Lovi purchased and went into the possession of the premises before the judgment was rendered, his possession was notice to all persons of the title under which he held the property. Jackson, who purchased the certificate of purchase, and Berry, who bought of Jackson while Lovi was in possession, have the same, but no greater, rights or equities than Keeler would have had if he had taken a deed in his own name and brought an action to recover the property. The attachment of Keeler was levied on the property before Hall sold to Palmer, and of course Keeler acquired a prior lien. The question then presented is, whether the sale under the judgment which followed the attachment conformed to the law. If it did, the title of Hall passed under the sale. If it did not, Lovi acquired the title under the deeds from Hall to Palmer, and from Palmer to himself.

At the time of the sale under the attachment proceedings, it appears, from the evidence, that the two lots were worth $8000. They were sold, under the judgment, for the small sum of $65.38. No argument is needed to show that the amount for which the lots were sold was grossly inadequate, and it is claimed that upon this ground alone the sale was properly set aside. This court has said, in a number of cases, that judicial sales will not be disturbed for mere in-

adequacy of price, unless so gross as to amount to a fraud.
*Duncan* v. *Sanders*, 50 Ill. 475 ; *Comstock* v. *Purple*, 49 id. 160.

It will not, however, be necessary, in this case, to inquire
whether the amount bid for the lots was so grossly inadequate
as to amount to a fraud, as there is another ground, well
sustained by the decisions of this court, upon which the
decree of the circuit court may be sustained.    The court, in
the decree, found that the property had been sold *en masse,*
and we are not prepared to hold that the finding was so
clearly against the weight of evidence on this point as to jus-
tify a reversal of the decree.    It is true that defendants intro-
duced some evidence tending to show that the lots were sold
separately, but the sheriff's return indorsed on the execution
fails to show that the lots were offered separately, or that
they were sold separately, and the deputy sheriff (Galpin)
who made the sale, although he was a witness in the case,
was not called upon by the defendants to prove the fact that
he offered and sold the lots separately.    If the lots were
offered separately, or sold separately, the deputy sheriff who
made the sale doubtless knew that fact, and if the property
had not been sold *en masse,* it is but reasonable to suppose
defendants, on the trial, would have settled that question
beyond dispute by the testimony of that witness.

If, as found by the circuit court, the property was sold
*en masse,* and the price paid was inadequate, as we have seen
it was, can the sale be sustained?    In *Phelps* v. *Conover,* 25
Ill. 312, it was held, that where a farm is composed of sev-
eral adjoining tracts of land, it would be the duty of the
officer to offer each tract separately, and if the smallest sub-
division will not sell, then add another subdivision to it, and
so on until it has been offered in subdivisions, when, not
selling, it would be but just to the creditor to sell it, on a
reasonable bid, *en masse,* the officer making a full return of
all the facts.    In *Morris* v. *Robey,* 73 Ill. 462, the rule indi-
cated was approved, and it was held that where, in addition

to inadequacy of price, irregularities occur in the sale, such as selling several tracts or lots in gross without first offering them separately, or in lots of two or more and less than the whole, equity will interfere to set the sale aside. See, also, *Bradley* v. *Luce*, 99 Ill. 234, and *Cassidy* v. *Cook*, id. 385, where the same doctrine was announced.

There was no necessity, here, of sacrificing this property. The two lots were worth $8000, and had one been offered, no doubt a bid would have been made large enough to pay the small judgment upon which the lots were sold. But the lots were not offered separately, and the rule which has been established as the correct one to govern a sheriff in the sale of property was not observed. On the other hand, the property was sold *en masse*, at a price grossly inadequate, and we are aware of no principle upon which such a sale can be sustained. Indeed, it would be a reproach upon the principles of equity to sustain a judicial sale of this character.

But it is said the complainant, Lovi, has been guilty of *laches*, and upon that ground the decree can not be sustained. It is true that Lovi was aware of the pendency of the attachment suit when he bought the property, but he was informed by the agent of Hall (Mr. Coats) that it would be taken care of. In April, 1875, which was more than a year before the redemption expired, Lovi, who was then about to make a payment on the property, called Coats' attention to the attachment, when Coats took the abstract of title, which had been previously made, to the clerk's office, and the assistant clerk (Eli Smith) wrote on the abstract, opposite the memorandum of the attachment suit, the following:

"This case prosecuted to judgment May 16, 1874, and judgment satisfied in full by return of execution No. 5077, as appears from the records of this office.

JACOB GROSS."

Upon receiving this from the agent of Hall, Lovi supposed that the attachment judgment had been paid and discharged,

not having the least suspicion that the lots had been sold in satisfaction of the judgment. This belief of Lovi was no doubt strengthened by the conduct of the defendants in regard to the sale. As before observed, the lots were sold February 5, 1875. Under this sale the purchaser was entitled to a deed May 6, 1876, and yet no deed was taken until June 21, 1879, and the deed was not recorded until May 16, 1881. It is true that the law did not compel a deed to be taken out sooner than it was, or compel the purchaser to place the deed on the record; but why conceal the fact from the record that the title to these lots had passed under a judicial sale, unless it was to gain some undue advantage over Lovi, who was spending his money each year in payment of taxes and improvements on the property, in entire ignorance of any adverse title? Lovi had no actual knowledge whatever that the lots had been sold under the judgment, and under all the circumstances we do not think *laches* can be imputed to him.

It is also contended that the court erred in refusing to allow the sheriff to amend his return on the execution during the trial, in order to show that the execution was received by him October 20, 1874,—before the life of the execution expired. The execution was issued October 10, 1874. The property was advertised by the sheriff January 15, 1875,—seven days after the life of the execution ended,—and the sale occurred February 5. This being a special execution, issued upon a judgment rendered in an action of attachment, a formal levy on the land under the execution was perhaps not required, as a levy had been made under the writ of attachment when it was issued; but unless the execution came into the hands of the sheriff before the expiration of ninety days from the time it was issued, it had lost its vitality, and the sheriff had no right to proceed under it. But if the return had been amended, in the view we have taken of

the case the result would have been the same, and hence it is not deemed important to consider that question.

Other questions have been discussed in the argument, but we do not deem it necessary to consider them here.

We are satisfied that the decree of the circuit court, upon a careful consideration of the whole record, is right, and it will be affirmed.

*Decree affirmed.*