## James B. Morris *et al.*

### *v.*

### Isabella Robey.

1. Sale on execution—*inadequacy of price alone, not ground for equitable relief.* Although inadequacy of price on an execution sale may be no ground for equitable relief, without additional circumstances to justify it, yet if there are, in addition to such inadequacy of price, irregularities in the sale, such as selling several tracts or lots in gross, without first offering them separately or in lots of two or more, and less than the whole, equity will interfere and set the sale aside.

2. Same—*mode of selling, where several lots are embraced in levy.* Where several tracts of land are levied on, it is the duty of the officer to offer each tract separately, and if one tract will not sell separately, to add another to it, and so on until all the tracts are offered, and if not then sold, he may, upon a reasonable bid, sell the whole *en masse.*

3. Same—*purchaser chargeable with notice of irregularity.* The purchaser at a sale on execution is chargeable with notice of the value of the property and of its situation, and of the legal rules bearing upon the transaction.

4. Same—*when relief against, is in equity.* Where a third person becomes the purchaser at an execution sale, the proper remedy against such sale, if irregular, is in a court of equity, and not on motion to set aside the sale in the court of law out of which the execution issued.

5. Same—*within what time equity will relieve against.* Where a sale of property in gross produces a great wrong, a court of equity will entertain jurisdiction two or three years after the sale, and afford relief, if the purchaser has not parted with his title and a reasonable excuse is shown for the delay.

Appeal from the Superior Court of Cook county; the Hon. Samuel M. Moore, Judge, presiding.

Mr. M. F. TULEY, Mr. WILLIAM HOPKINS, Messrs. JUDD & WHITEHOUSE, Mr. W. F. SINGLETON, and Messrs. TULEY, STILES & LEWIS, for the appellants.

Mr. GRANT GOODRICH, and Mr. A. B. JENKS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed in the Superior Court of Cook county, April 30, 1869, by James Robey against James B. Morris and others, to set aside a sale made by the sheriff of Cook county, of certain lots in Chicago, and to cancel the sheriff's deed therefor. The court below granted the relief sought, and the defendants appealed from the decree.

The sale was had under the following circumstances: On August 31, 1866, Samuel Delamater commenced a suit in foreign attachment, in the Superior Court of Cook county, against Robey.

The attachment writ, by direction of the plaintiff, was levied on a certain part of lot 2, in block 24, in the School Section addition to Chicago, and lots 22, 23, 24, 25, 26, 27 and 28, in the Canal Trustees' subdivision of the south-east quarter, section 7, etc. The default of Robey was taken in the attachment suit, and on the 20th of January, 1867, judgment against him by default was rendered in Delamater's favor, for $168.85. On the 15th day of August, 1867, a special execution was issued for the sale of the property attached, and on the 6th of September, 1867, the sheriff sold, upon the execution, at public auction, the eight lots attached, *en masse,* to the appellant Morris, for the sum of $217.06. A certificate of sale was, on the same day, issued to Morris, under which he was entitled to a deed, if the property was not redeemed before December 6, 1868.

On the 28th of January, 1869, the property not having been redeemed, the sheriff executed a deed to Morris. At the time of the commencement of the attachment suit, and afterward, the proof shows Robey to have been a resident of London, in Canada; that for some years prior to that time, he had been in bad health, and, under the advice of his physician, was trav-

eling a share of the time. In October, 1869, he departed this life, and Isabella Robey, who was made executrix and sole devisee under his will, was substituted as complainant in this suit.

The average value of the whole property, the eight lots, at the time of the sale, according to the average of the estimates of the witnesses who testified upon the subject, with the exception of one whose testimony was so widely variant from that of all the others as not to entitle it to consideration, was upwards of $20,000; and any one of the lots was worth more than seven times the amount at which the whole were struck off to Morris, and one of them over thirty times the amount. This lot was a mile and a half distant from the others. The lots were all 25 feet front. There is nothing in the proof to indicate that there was any reason, from the condition or relative situation of the lots, why any one lot would not sell to as good advantage, and for as good a price, by itself, as in connection with the others, and without injury to the rest. There is no pretense of any defect of title in respect to any of the lots.

The only attempted explanation of the excessive levy under the writ of attachment was, that Delamater did not know but that Robey might have previously disposed of some of the property.

There was, in this case, such an enormous disproportion between the value of the property and the sum for which it was sold, as to shock the conscience. And although inadequacy of price on an execution sale may be no ground for equitable relief, without additional circumstances to justify it, we are of opinion that such additional circumstances do exist in the present case, and that they are to be found in the irregular mode of selling these eight separate lots in gross, without having first offered them in parcels of two and more, less than the whole.

In *Day* v. *Graham*, 1 Gilm. 435, several town lots and tracts of land, worth about $4000, were offered separately, and there being no bid, they were sold *en masse* for $50.62; the titles were reported defective. This court there say: We have no doubt

but what the sale of the property *en masse* was illegal, and ought to be set aside. This case again appears in 4 Gilm. 392, where the court say, that in the former case "the opinion was expressed that the sale was clearly irregular and ought to be set aside. We are entirely satisfied with the reasons there given for that conclusion." In *Stewart* v. *Cross*, 5 Gilm. 442, the court say: Had there been any allegation that the land was worth $1000 at the time of the sale, instead of at the time of filing the bill, such allegation, in connection with the other statements in the bill, would have presented a clear case for the interposition of a court of equity; for it would never be allowed for an officer to sell *en masse* a tract of land worth $1000, to satisfy an execution of less than $30, when the tract was susceptible of division and the sale of a small part would have satisfied the debt; and see *Cowen* v. *Underwood*, 16 Ill. 22. In *Balance* v. *Loomis*, 22 Ill. 82, a lot and piece of land, worth in the aggregate $5000, were offered by the sheriff first in separate parcels; there being no bid they were sold in gross for $226.79. Although there seemed to be some question about the title to the lot, and some incumbrance upon the land, the court held it a clear case for relief, and set aside the sale; and see *Jackson* v. *Newton*, 18 Johns. 362; 1 Johns. Ch. 505, *Wood* v. *Morrell; Howell* v. *Baker*, 4 id. 117; *Tiernan* v. *Wilson*, 6 id. 410; *Williams* v. *Allison*, 33 Iowa, 286. In *Phelps* v. *Conover*, 25 Ill. 312, the rule was laid down, that where several adjoining tracts of land were levied upon, it would be the duty of the officer to offer each tract separately, and if one separate division did not sell, to add another to it, and so on, until all the subdivisions were offered, when not selling, it would be but just to the creditor to sell the whole on a reasonable bid *en masse*, the officer making a full return of all the facts; the decision acknowledging the creditor's right to insist upon a sale. And it was there further said, while, on the one hand, the plaintiff in execution has the right to demand a sale, so, on the other, the debtor has a right to insist that it shall be so conducted that he shall not be needlessly and irreparably injured.

There was the testimony of one witness, and only one, that of the attorney of Delamater, going to show a compliance by the sheriff with his duty, as declared in the case last cited, by offering for sale first the lots separately, and there being no bid, that he then offered two lots together, and so on, an additional lot at each offer, until he had embraced all the lots levied on, and there being no bid, he finally offered all the property together. But the testimony of Delamater, Morris, and Bradley, the deputy sheriff who made the sale, was that the lots were offered separately, and there being no bid, they were then offered together and sold. The statement in the certificate of sale given by the deputy sheriff to Morris on the purchase was, that he sold all the lots to Morris for the sum of $217.06, "said lots having first been offered separately, without any bid or bids therefor, or either of them, or any part thereof."

We regard the preponderance of the testimony to be, that the only offer of the lots for sale was separately, and then in gross; that there was no offer of any two, or more, less than the whole, together.

This was not following the course prescribed in *Phelps* v. *Conover*, *supra*, and, as there declared, there was in this respect an omission of duty on the part of the sheriff, which, in conjunction with the gross inadequacy of price, in our opinion, constitutes ground sufficient for the setting aside of the sale. Had the course above indicated been pursued, and two or more of the lots less than the whole been offered for sale together, there might have been a bid therefor and sale, and thus a portion of this immense sacrifice of the debtor's property have been avoided; or, at least, it might have resulted in making sale of the property in portions, instead of all together.

It is a material thing as respects the debtor's benefit, to have his property thus sold in portions, as it affords him the opportunity to redeem and save a part, without being compelled to redeem the whole, or none.

Before resorting to the extremity of the exposure of the

debtor's property to such a ruinous sacrifice, by selling in gross so large a number of separate pieces of property, each one of which was many times more in value than the amount of the debt, the necessity of so doing, in order to make any sale, should have been demonstrated by the officer having first exhausted all the other means which it was his duty to use, as has been laid down by this court, to make sale of some less number of the lots than the whole. Before this having been done, such a sale, under the circumstances here, may well be adjudged unnecessary, oppressive, unjust and illegal.

The mode of sale here, then, was not regular, and accepting the decision in *Phelps* v. *Conover* as the rule in such case, there was an advantage taken against the debtor not warranted by law; there was the omission of a duty or requirement of the law; which circumstances, with gross inadequacy of price, are at least impliedly recognized as grounds of equitable relief in a number of cases, as in *McMullen* v. *Gable*, 47 Ill. 71, and *Mixer* v. *Sibley*, 53 id. 75.

The point is made, by appellants, that the court upon whose judgment the execution issued, had full power to set aside the execution sale, and so the remedy was full and complete at law.

But in *Day* v. *Graham, supra*, it was expressly held, that where a third person becomes a purchaser, the proper remedy was not on motion in a court of law, but in equity. It is then said, there should have been a motion to set aside the excessive levy under the writ of attachment. But the excessive levy did the debtor no harm, and it was no necessary result that all the property levied upon would be sold. He had no reason to apprehend that any more of it would be sold than would be reasonably required to satisfy the claim of $168, and much less that there would be an abuse of the process of the court in making an illegal or oppressive sale of his property.

The point is much relied upon, that Morris was a *bona fide* purchaser, and to be protected as such; and that therein lies a difference between the present and some of the cases cited, where the plaintiff in execution, or his attorney, was the pur-

chaser, and thus affected with notice of all irregularities in the proceedings.

But we fail to see the distinction, as applied to this case. Morris was cognizant of, and a participant in the wrongful mode of the sale of the property. He must be chargeable with notice of the value of the property and of its situation, and of the legal rules bearing upon the transaction. We do not perceive, so far as respects this point of objection, the wrongful mode of the sale, that he stands in any better position than the plaintiff in execution would have done, had he been the purchaser.

But it is insisted that Robey neglected to avail himself of the redemption to which he was entitled, and that relief should be refused upon the ground of *laches*.

In *Fergus* v. *Woodworth*, 44 Ill. 374, it was held that if no application is made to set aside the sale before the redemption expires, the court will require it to be shown that real injustice has been done, or the party may be called upon to show a reasonable excuse for his delay to make an earlier application.

But the court there say: If, however, the sale of property in gross produces a great wrong, a court of equity might entertain jurisdiction two or three years after the sale, and afford relief, if the purchaser had not parted with his title, upon a reasonable excuse being shown for the delay. There is evidence that Robey knew of the commencement of the attachment suit and the rendition of the judgment; but we fail to find any proof that he had any knowledge of the sale, or what of his property had been attached. Knowing of the existence of the attachment suit, he might expect that there would be an appropriation of such an amount of his property as would be reasonably required for the satisfaction of the plaintiff's claim, but he could have had no reason to suppose that under the guise of collecting a debt of $168, the process of a court of justice was going to be perverted to the despoliation of his entire estate, of such a magnitude.

In view of all the circumstances, the proceeding being by

foreign attachment, the debtor a resident of another State, and the bill having been filed within less than six months after the time of redemption expired, we can not say there has been such *laches* in the case, as should bar the claim for relief.

We fully appreciate the importance, urged upon our attention, of upholding judicial sales and protecting innocent purchasers thereat, and believe the decision here entirely consists therewith. When at such sale there is the immense and needless sacrifice of a debtor's property disclosed in the present case, the buyer has no reason to suppose that his purchase will receive judicial approval, where there has been, in his own knowledge, in the mode of the sale, a violation of a material safeguard of the law to protect the debtor against oppression and despoilment of his property by the abuse of the process of the court.

The court below set aside the sale upon the terms of the payment of the amount bid upon the sale, and taxes paid by the purchaser, Morris, with interest from the time of payment.

A majority of the court deem the decree a proper one, and it is accordingly affirmed.

*Decree affirmed.*