William Hobson

*v.*

Mary McCambridge *et al.*

*Filed at Springfield October 31, 1889.*

1. Judgment—*in case of nominal and beneficial plaintiffs.* In a suit before a justice of the peace in the name of one for the use of another, it is irregular and erroneous to enter judgment in favor of the beneficial plaintiff alone, and if so entered, it will operate as a discontinuance of the suit as to the nominal plaintiff, and the judgment will be treated as in favor of the beneficial plaintiff alone.

2. Transcript from justice—*requisites.* In order to authorize the filing of a transcript of a judgment of a justice of the peace in the circuit court, so as to have an execution issued out of that court, the transcript must show on its face the issue of an execution by the justice in favor of the plaintiff in the judgment, and its due return *nulla bona* by the proper officer. Without such issue and return the transcript, and subsequent proceedings thereunder, will be void.

3. Execution—*must follow the judgment.* An execution must follow the judgment in every essential particular. It must be in favor of the plaintiff in the judgment. It should show for and against whom it issues, the amount to be collected of the latter in favor of the former, and also the date at which, and the court wherein, the judgment is rendered. No execution can be proper in form unless in these particulars it exactly pursues the judgment.

4. Same—*notice to defendant before levy.* It is the duty of an officer holding an execution, to notify the defendant thereof before proceeding to levy the same, when that is practicable.

5. Judicial sale—*grounds for setting aside.* While inadequacy of price may not be sufficient, of itself, to set aside a sale of land on execution or judicial sale, yet where there are circumstances of irregularity or fraud, or that show that unfair advantage was sought by the purchaser or the person benefited by the sale, the inadequacy of the price may always be taken into consideration, and may become conclusive evidence of fraud.

6. The holder of an unindorsed note brought suit before a justice of the peace in the name of the payee, for his use. The justice entered judgment in the name of the usee, alone. Execution was issued in favor of the payee, for the use of the holder, which was returned *nulla bona*, and thereupon a transcript of the judgment and proceedings was filed in the circuit clerk's office, whence issued a similar execution, which was levied on real estate of one of the defendants, and a sale was had, without any demand by the sheriff on the defendants, at a grossly inadequate price, and a deed made to the beneficial plaintiff, who was the purchaser: *Held,* that the judgment debtor whose property was sold was entitled, in a court of equity, to have the sale set aside on payment of the sum due on the judgment, on the ground of irregularity in the proceedings, and the inadequacy of the price.

Appeal from the Circuit Court of Montgomery county; the Hon. Jesse J. Phillips, Judge, presiding.

This was a bill filed in the circuit court of Montgomery county, by appellees, Mary E. McCambridge, Blair McCambridge and Jeremiah Sullivan, against appellant, Hobson, to set aside a levy, sale, certificate of purchase and sheriff's deed to an eighty-acre tract of land, and to restrain Hobson from further prosecuting an action of ejectment therefor.

The material facts of the case are, that on May 21, 1884, Blair McCambridge gave his promissory note to T. Battles for

$55, with his wife, Mary E., as security. The note, however, was the joint and several note of the two promisors. May 2, 1885, Hobson became the owner of the note, without indorsement, and on the same day brought suit in a justice's court thereon, in the name of Battles, for his use. On the 8th day of May following, judgment by default was rendered against the defendants in that suit, in favor of William H. Hobson, for the sum of $56.60. Said judgment, omitting the caption and venue, is as follows:

"Sum demanded, face of note, $55, interest, $1.60,—total, $56.60. May 2, 1885, summons issued in the above cause, and delivered to constable F. P. Cockelrese to serve, returnable on the 8th day of May, 1885, at one o'clock P. M. May 5, 1885, summons returned by constable Cockelrese, served by reading the same to Blair McCambridge and Mary E. McCambridge, defendants. May 8, 1885, two o'clock P. M., the defendants not appearing, it is considered by the court that Blair McCambridge and Mary E. McCambridge pay to Dr. W. H. Hobson ($56.60) fifty-six dollars and sixty cents, his demand, and the costs of this proceeding, which are four dollars and seventy-five cents ($4.75.)

BENJAMIN F. McCLURE,<br>
*Justice of the Peace.*"

The suit was docketed "T. Battles, for the use of Dr. W. H. Hobson *vs.* Blair McCambridge and Mary E. McCambridge."

On May 29, 1885, the justice issued an execution on this judgment in favor of T. Battles, for the use of Hobson, and delivered the same to the constable, who returned the same, June 2, 1885, indorsed "no property found." On June 8, 1885, a transcript of the judgment was filed in the office of the clerk of the circuit court of the county, and the circuit clerk, June 16, 1885, issued an execution on such transcript, in favor of T. Battles, for the use of W. H. Hobson. This execution came to the hands of the sheriff June 17, 1885, who, without seeing either of the defendants, or making any per-

sonal demand, levied on the south half of the north-west quarter of section 36, town 11 north, range 5 west, and on July 25, 1885, sold the same to Hobson for $82.65, the debt, interest and costs. The return shows the land was first offered in forty-acre tracts, but there being no purchaser therefor, the eighty was sold *en masse.* The land was not redeemed, and the sheriff, October 29, 1886, executed his deed to Hobson for the premises sold. The land was the separate property of Mary E. McCambridge. This tract, at the time of levy and sale, was incumbered for about $750. Mrs. McCambridge also owned another tract of thirty-two and one-half acres in the same county, which was unincumbered, and worth from $30 to $45 per acre. She also was the owner of a piano worth from $125 to $200, and some other personal property free from incumbrance.

It is claimed by complainants that they had no knowledge of the levy and sale of the land until after redemption had expired, and that no demand was made, either by the constable or sheriff, for a payment of the several executions while in their hands, and they both so testified. The constable testifies that he did make a demand, under his execution, of both the McCambridges, and the sheriff testifies that he mailed a postal card to Blair McCambridge, informing him that he held the last execution, but complainant denies receiving the same. It appears that Hobson commenced an action of ejectment against Sullivan, tenant of Mrs. McCambridge, and recovered one judgment, which had been vacated and a new trial allowed. On learning of the sheriff's deed, and on or about the first of December, 1886, the McCambridges tendered Hobson $91.50, the sum then due on the judgment, with eight per cent interest, which he refused to accept, which tender has since been kept good by bringing the money into court.

The circuit court rendered a decree setting aside the deed and sale, and perpetually enjoining prosecution of said suit in ejectment.

Mr. A. N. KINGSBURY, for the appellant:

In suits commenced before justices of the peace, technical precision and accuracy in the form of the entries are not indispensable. *Zuel* v. *Bowen,* 78 Ill. 234.

No particular form is required to make the finding of a justice of the peace a judgment, provided it is final, and may subject the party against whom it is given, to injury. *Kimball* v. *Riter,* 25 Ill. 276; *Railroad Co.* v. *Whipple,* 22 id. 105.

A variance between an execution and the judgment does not render the process void, but only voidable. *Durham* v. *Heaton,* 28 Ill. 269.

A court of equity will not relieve against mere irregularities. *Neuman* v. *Willitts,* 60 Ill. 519.

Failure to make demand of payment before levy and sale under execution will not affect the title acquired. At most, it may afford ground for a motion to set aside the sale. *Rock* v. *Haas,* 110 Ill. 528.

A sale of land will not be set aside merely because it sold at a sacrifice. *Noyes* v. *True,* 23 Ill. 503; *Greenup* v. *Stoker,* 12 id. 24; *Ayers* v. *Baumgarten,* 15 id. 444; *Kinney* v. *Knoebel,* 51 id. 112; *Mixer* v. *Sibley,* 53 id. 61; *Thomas* v. *Hebenstreit,* 68 id. 115; *Davis* v. *Pickett,* 72 id. 483; *Pickering* v. *Driggers,* 59 id. 65; *Flint* v. *Lewis,* 61 id. 299; *Davis* v. *Dresback,* 81 id. 393; *Morris* v. *Robey,* 73 id. 463; *O'Callaghan* v. *O'Callaghan,* 91 id. 228; *Emmons* v. *Moore,* 85 id. 304.

Mere inadequacy of price is not sufficient cause for setting aside a sale. *McMullen* v. *Gable,* 47 Ill. 67; *Comstock* v. *Purple,* 49 id. 158; *Dutcher* v. *Leake,* 44 id. 398; *Davis* v. *Pickett,* 72 id. 483; *Sowards* v. *Pritchett,* 37 id. 518; *Duncan* v. *Sanders,* 50 id. 475; *Hess* v. *Voss,* 52 id. 472; *Allen* v. *Shephard,* 87 id. 314.

Relief will not be granted in equity against a sale of land on execution *en masse,* until after application has been made to the court to which the execution was returnable, to set aside the sale. *Prather* v. *Hill,* 36 Ill. 402.

In the case at bar, the bill was filed July 25, 1887,—two years after the sale, and after one judgment in ejectment against appellees. Appellees had ample remedy by motion, and failed to avail themselves of that remedy. In such a case they must show a strong case of fraud, wrong or oppression. Neither fraud, wrong nor oppression is shown in this case. *Hay* v. *Baugh,* 77 Ill. 500.

It is only on the ground of fraud, or that some one may have been prejudiced by the sale of the land *en masse,* that the sale will be set aside, in equity, because the lands were not sold in separate parcels. *Ross* v. *Mead,* 5 Gilm. 171; *Gillespie* v. *Smith,* 29 Ill. 481.

It must be kept in mind that this is a proceeding in equity, and no mere irregularity can be made the basis of equitable interference; and also, that this is a collateral attack upon the title to the land in controversy. In such a case, the party should resort to a direct proceeding, if relief against irregularities is sought. *Rigg* v. *Cook,* 4 Gilm. 336.

Messrs. LANE & COOPER, for the appellees:

The execution must pursue the judgment, and be in the names of the parties, and if it does not, no title passes by a sale thereunder. *Bradford* v. *Water Lot Co.* 58 Ga. 280; *Hightower* v. *Vennys,* 27 Ark. 20; *Knight* v. *Applegate,* 3 Mon. 336; *Hastings* v. *Johnson,* 1 Nev. 615; *Farnham* v. *Hildreth,* 32 Barb. 277; *Cole* v. *Heinson,* 6 T. R. 234; *Palmer* v. *Palmer,* 2 Conn. 462; *Walker* v. *Marshall,* 7 Ired. L. 1; *Newsome* v. *Newsome,* 4 Ired. 381; *Collais* v. *McLead,* 8 id. 221; *Brem* v. *Jamieson,* 70 N. C. 567; *Thompson* v. *Bondurant,* 15 Ala. 342; *Beazley* v. *Dunn,* 8 Rich. 345; *Crittenden* v. *Lessendorfer,* 35 Mo. 240; *Shackleford* v. *Hooper,* 65 Ga. 336; *Battles* v. *Gerdy,* 58 Texas, 111; *Williams* v. *Atwood,* 52 Ga. 586; *Maury* v. *Shepperd,* 58 id. 68; *Shirley* v. *Phillips,* 17 Ill. 471; *Johnson* v. *Adleman,* 35 id. 265; *Dickerman* v. *Burgess,* 20 id. 266; *Hamilton* v. *Quimby,* 46 id. 90.

As to setting aside judicial sales for inadequacy of price and irregularities, see *Thomas* v. *Hebenstreit,* 68 Ill. 116; *Day* v. *Graham,* 1 Gilm. 435; *Dutcher* v. *Leake,* 44 Ill. 400; *Dickerman* v. *Burgess,* 20 id. 266; *McLagan* v. *Brown,* 11 id. 523; *Stewart* v. *Croes,* 5 Gilm. 442; *Ballance* v. *Loomis,* 22 Ill. 82; *Morris* v. *Robey,* 73 id. 463; *Pitts* v. *Magie,* 24 id. 610; *Roseman* v. *Miller,* 84 id. 297; *Meyer* v. *Mintonye,* 106 id. 414; *Emmons* v. *Moore,* 85 id. 306; *Palmer* v. *Douglas,* 107 id. 204; *Berry* v. *Lovi,* id. 612.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The bill in this case sought to set aside the sheriff's sale and deed of the eighty-acre tract of land in question, and the circuit court rendered its decree in accordance with the prayer of the bill. It is insisted there was no authority of law for filing the transcript of the judgment of the justice of the peace in the office of the clerk of the circuit court, and therefore no execution could properly be issued thereon by the clerk of said court. The suit was originally brought before the justice of the peace, in favor of Battles, for the use of Hobson, against the two McCambridges, but the justice rendered judgment against the defendants, in favor of William H. Hobson. It will be unnecessary to question the sufficiency of the entries by the justice in other respects, to constitute a valid judgment. It was clearly irregular and erroneous to render judgment in favor of the beneficial plaintiff, alone. The entry of the judgment in favor of Hobson necessarily operated as a discontinuance of the suit as to Battles, the nominal plaintiff, and he must be regarded as not a party to the further proceedings. The judgment must be treated as a judgment in favor of Hobson, alone.

By section 95, chapter 79, of the Revised Statutes, it is provided: "When it shall appear by the return of an execution first issued, as aforesaid, (by the justice of the peace,) that the

defendant has not personal property sufficient to satisfy the judgment and costs, within the district in which judgment was rendered, and it is desired by the plaintiff to have the same levied on real property in that or any other district, it shall be lawful for the justice to certify to the clerk of the circuit court of the county in which such judgment was rendered, a transcript, which shall be filed by said clerk, and the judgment shall thenceforward have all the effect of a judgment of the said court, and execution shall issue thereon out of that court, as in other cases."

The issue of an execution, and its return by the proper officer, is made, by the statute, a condition precedent to the power of the justice to certify such transcript to the circuit clerk. Unless the transcript shows, on its face, that this section of the statute has been substantially complied with, the clerk of the circuit court is invested with no authority, by law, to issue an execution. In 1 Freeman on Executions, (2d ed.) sec. 14, that author says: "When the county clerk issues execution to enforce the judgment of a justice of the peace, his authority to do so rests upon the filing of the transcript, and upon the existence of such other facts as the statute has prescribed. Unless it can be shown that the law was substantially complied with, the act of the clerk is regarded as without authority, and therefore as void,"—citing *Carr* v. *Youse,* 39 Mo. 346, *Ruby* v. *Hann,* id. 480, *Linderman* v. *Edson,* 25 id. 105, and other cases. The author proceeds: "So there are statutes authorizing transcripts of judgments to be sent to other counties, sometimes for the purpose of making such judgments liens in the counties to which the transcripts are sent, and sometimes to authorize the issue of execution in such county. Where the latter is the object, the authority to issue execution depends on compliance with the provisions of the statute, and if issued in the absence of such compliance, the execution is void,"—citing *Colville* v. *Neal,* 2 Swan, 89, *Morgan* v. *Hannah,* 11 Humph. 122, and *Eason* v. *Cummins,* id. 210. In the same

section this author further says : "When authority is given to the clerk of a circuit court to issue execution to any other county in which the judgment has been docketed, the docketing of the judgment in such other county has been held by the Supreme Court of Wisconsin to be a prerequisite to the issue of the writ to said county. It is even said that the fact of such docketing must be recited in the writ, on the ground that the writ must, on its face, disclose the authority for issuing it, and that failing to state such docketing, it discloses no authority whatsoever."

Without further reference to authority, we think it clear that an execution must have been issued by the justice upon the judgment rendered by him, and duly returned *nulla bona* by the proper officer, before a valid transcript could be made and filed under this statute, and that without such issue and return the transcript and the proceedings thereunder were nullities. The transcript in this case fails to show the issue and return of an execution upon the judgment of the justice of the peace. It is true, the issue and return of an execution are shown, but it was not in favor of the proper plaintiff. It was in favor of Battles, while the judgment is in favor of Hobson, alone. The fact that he was named as beneficial plaintiff, or the words, "for the use of Dr. W. H. Hobson," does not constitute him the plaintiff in the execution. These words are unnecessary for any purpose, other than to protect the interest of the usee against the nominal plaintiff. In *McCormick* v. *Fulton*, 19 Ill. 570, we said : "As the note was not assigned, the beneficial plaintiff had no right to sue in his own name. It was only by the use of the name of the payee of the note that he could sue, and there is no provision of law that authorizes his name to be dropped in this proceeding. He was a necessary party in every stage of the proceeding. Courts of law can only recognize him as the plaintiff, although in modern practice, as a matter of convenience, they will declare and protect the trust. The beneficial plaintiff is not author-

ized to appeal in his own name, and every step taken must be in that of the nominal plaintiff." And this is, as we understand, the uniform doctrine. The author from whom we have before quoted, in his work on Executions (sec. 42,) says: "In this part of the execution the same precision must be attained as is necessary in the entry of a judgment. It should show for and against whom the execution issues, the amount or amounts to be taken from the latter for the benefit of the former, and also the date at which, and the court wherein, the judgment was rendered. No execution can be proper in form, unless, with reference to these particulars, it exactly pursues the judgment." The execution must follow the judgment in every essential particular. See *Bradford* v. *Water Lock Co.* 58 Ga. 280; *Knight* v. *Applegate*, 3 Mon. 376; *Hastings* v. *Johnson*, 1 Nev. 377; *Farnham* v. *Hildreth*, 32 Barb. 277; *Cole* v. *Heinson*, 6 T. R. 234; *Palmer* v. *Palmer*, 2 Conn. 462; *Walker* v. *Marshall*, 7 Ired. L. 1.

It is, however, in the view we take of this case, unnecessary to hold that the execution issued by the clerk was void. To say the least, it was a grave and serious irregularity to issue execution, either by the justice or clerk, in favor of Battles, upon a judgment in favor of Hobson, and afforded ground for setting the same aside, upon motion or by bill in chancery; and especially is this the case where, as here, there was gross inadequacy of price, and where the officer executing the process failed to call upon the defendants and demand payment, or in any manner to serve his execution. In addition to this, the evidence leaves but little doubt, if any, of the ability of the constable to have made the amount of the execution by a levy upon personal property. It is true, the constable testifies that he notified the defendants of the execution, and demanded property; but this is denied. Mrs. McCambridge had personal property, which she not being the head of the family, was not exempt from execution, sufficient to satisfy such demand. Without making an effort to find property, the constable

made return of his execution within four days after it came to his hands. Why this was done does not appear, but immediately following, the transcript was filed in the office of the clerk of the circuit court, and on the 16th of June, 1885, execution was issued on the transcript, and the land sold on the 25th of July following. The land was first offered in forty-acre tracts, and there being no bids, the land was then sold *en masse.* It is shown that the land was susceptible of division. It is equally clear, from a preponderance of the evidence, that the sheriff did not serve the execution held by him, or give notice of it to the defendants, and it is not pretended that any notice was even sent to the defendant upon whose property the execution was levied. These facts might well warrant the court in finding that there had been an attempt, on the part of Hobson, to obtain, not simply the payment of his debt, but an unfair advantage, and securing a tract of land shown to be worth over $2000, for the sum of $83.65.

It is, however, said, that this tract of land was incumbered to the extent of $750, and hence Hobson could not safely purchase one forty acres thereof, although amply sufficient to satisfy his debt. We fail to see any real ground for fearing that this mortgage would attach to the forty that he might purchase, to the exclusion of the other forty. The exact reverse would have been the result. In case of the foreclosure of the mortgage the assets would have been marshaled, and the unsold part first made liable for the mortgage debt. But if this was not so, he might have levied upon the smaller tract of thirty-two and one-half acres, which was unincumbered, and belonged to the defendant Mrs. McCambridge. The land sold was worth from $30 to $40 per acre, or, at the lowest put by any of the witnesses, $2400. The incumbrance was $750, leaving the net value $1650, while the sale was for $83.65.

It is undoubtedly the rule, that when the debtor has the right of redemption, inadequacy of price alone will not justify the vacation of a sale on execution, or setting aside a judicial

sale. *Gibbons* v. *Bressler,* 61 Ill. 110; *Watt* v. *McGilliard,* 67 id. 513; *Allen* v. *Shepard,* 87 id. 214; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180. Where the inadequacy is gross, the purchaser can retain his advantage only by showing that he acquired title by proceedings free from fault or irregularity. If, says Mr. Freeman, the inadequacy can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated, "unless the complainant was himself in fault, or the rights of innocent third parties have become dependent on the sale." While inadequacy alone may not, upon the grounds of public policy, be sufficient, of itself, to set aside a sale on execution, or a judicial sale, yet where there are circumstances of irregularity or of fraud, or that show that unfair advantage was sought by the purchaser or the person benefited by the sale, the inadequacy of price may be always taken into consideration, and may become conclusive evidence of fraud. Freeman on Executions, sec. 309; *Morris* v. *Robey,* 73 Ill. 462; *Davis, Cory & Co.* v. *Chicago Dock Co. supra,* and authorities cited.

In this case there is a palpable, gross inadequacy in price, and that there are serious errors and irregularities in the proceedings can not be questioned. Under the facts in the case it can hardly be presumed that the constable returned the execution so hastily, and without any effort to obtain its satisfaction, without the direction of Hobson. Promptly upon the return of the execution the justice's transcript was filed, and an execution issued from the circuit court, and the levy is made upon land of much greater value than was necessary, without any notice to the McCambridges. The land is sold within the lifetime of the execution issued by the justice, and, as we have seen, not only the levy may be said to be excessive, but a much greater portion of the land was sold than was necessary to satisfy the debt. It seems improbable that Mrs. McCambridge would have permitted redemption to expire, under the circum-

stances here shown, if she had notice of its sale. It was the duty of the officer holding the execution to notify the defendant thereof before proceeding to levy the same, when that was practicable. Taking all these circumstances into consideration, the gross inadequacy of the price at which the land was sold becomes, we think, strong evidence that the purchaser sought and obtained undue advantage, and the inference of fraud on his part, or a fraudulent purpose in manipulating these proceedings for the purpose of gaining such advantage, becomes irresistible.

The court below set aside the sale and deed on equitable terms, giving Hobson the amount of his judgment, with interest thereon, and his costs. We are of opinion that he has no just cause of complaint, and the decree of the circuit court will be affirmed.                    *Decree affirmed.*