### Sidney Misener

*v.*

### Fred Glasbrenner.

*Opinion filed April 17, 1906.*

1. Judicial sales—*inadequacy of price, coupled with other irregularities, is ground for setting aside sale.* Mere inadequacy of price, alone, is not sufficient to set aside a sheriff's sale, but this fact in connection with other irregularities will avail.

2. Same—*when judicial sale is properly set aside.* A sheriff's sale of homestead premises for $169.82 to satisfy a judgment for $78, revived on *scire facias* after the homestead rights had attached, is properly set aside where no demand for payment of the judgment was made and no steps taken to set off the homestead or otherwise comply with the statute respecting sales of homestead property.

3. Same—*when decree setting aside sheriff's deed is equitable.* A decree setting aside a sheriff's deed is proper and equitable, where it appears the property was sold at a grossly inadequate price and without compliance with the law exempting homestead estates from sale on execution, and where the decree requires the payment of the judgment, with legal interest, as a condition precedent to the setting aside of the deed.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is an appeal by Sidney Misener, appellant, from a decree entered by the superior court of Cook county in favor of Fred Glasbrenner, appellee, setting aside a sheriff's deed dated November 26, 1904, to certain real estate situated in that county.

The facts in the case are substantially as follows: On September 27, 1893, a judgment was rendered against one Michael Glasbrenner, father of appellee, before a justice of the peace in said county in favor of William Winkler for $78, and on November 14 following, a transcript of the same was filed in the office of the circuit clerk. On January 4, 1894, execution was issued upon this transcript and returned no property found. In June, 1895, Michael Glasbrenner died intestate, seized of the property in question, and leaving surviving him his widow, Maria Glasbrenner, and Fred Glasbrenner, appellee, his son and only heir-at-law. Subsequently the widow was married to August Weinert and removed from the premises. There was no administration of the estate of Michael Glasbrenner and no effort was made on the part of the judgment creditor to have his judgment paid out of the estate. In June, 1900, the appellee, Fred Glasbrenner, moved on the premises and occupied them as his homestead, subject, however, to the dower rights of his mother. On July 23, 1902, the judgment creditor began *scire facias* proceedings in the circuit court of Cook county to revive the judgment against Fred Glasbrenner, Maria Weinert and August Weinert, and a judgment of revival was rendered by default. On July 22, 1903, that judgment was assigned to appellant, Sidney Misener. Execution was levied on the premises, and on August 25, 1903, they were sold by the sheriff to appellant for $169.82, and on November 26, 1904, after the expiration of the equity of redemption a sheriff's deed was executed to him. On December 24,

221—25

1904, appellee filed his bill in the superior court of Cook county to set aside said deed, on the ground that the sale was for a grossly inadequate price and a fraud on the rights of complainant; that the homestead rights of appellee, acquired in 1900, were prior to the lien of the judgment acquired by the *scire facias* proceedings of 1902; that the homestead was exempt from sale under said revived judgment, and that the sheriff sold the same without setting off said homestead; that no demand for the payment of said judgment was ever made on him, and he never had any notice of any execution issued on said judgment or of levy or sale of said property by the sheriff, and that he received no notice of said sale until November 29, 1904, after the expiration of the equity of redemption and after said deed had been issued to appellant. Upon answer being filed denying the irregularities in the sale as alleged in the bill, a decree was entered setting aside the deed upon the payment by appellee to appellant of $169.82, with interest thereon at five per cent from August 25, 1903, one-half of the cost of suit being taxed against each party. To reverse this decree an appeal has been prosecuted by appellant to this court.

STIRLEN & FAULDS, and A. J. BEDARD, for appellant.

ELMER E. WAGNER, and WILLIAM G. BOPP, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is insisted that the premises in question, at the time of the sale, were worth $2000, were occupied by appellee as a homestead, and that he was the owner in fee of the same, subject to the dower interest of his mother and a mortgage of $700; that they were sold for $169.82 on a judgment which was originally for $78; that appellee had no notice of the issuing of the execution or the levy of the same or the sale of the premises, and that he knew nothing of any of the proceedings until the sheriff's deed had been issued and the equity of redemption had expired; that no demand was

made upon him by the sheriff and no steps taken to assign his homestead in the premises.

It seems to be very apparent from the evidence that no demand was made upon appellee and that he had no notice whatever of the proceedings. That he would have permitted premises of the value of at least $1000 to be sold for a debt of $169.82 would seem unreasonable. While it has been held in a great many cases that mere inadequacy of the price alone is not sufficient to set aside a sheriff's sale, yet this fact, in connection with other irregularities, will avail. In the case of *Hobson* v. *McCambridge,* 130 Ill. 367, we said (p. 377) : "It is equally clear from a preponderance of the evidence that the sheriff did not serve the execution held by him or give notice of it to the defendants, and it is not pretended that any notice was even sent to the defendant upon whose property the execution was levied. These facts might well warrant the court in finding that there had been an attempt on the part of Hobson to obtain not simply the payment of his debt, but an unfair advantage, and securing a tract of land shown to be worth over $2000 for the sum of $83.65. * * * It is undoubtedly the rule that when the debtor has the right of redemption, inadequacy of price alone will not justify the vacation of a sale on execution or setting aside a judicial sale. (*Gibbons* v. *Bressler,* 61 Ill. 110; *Watt* v. *McGalliard,* 67 id. 513; *Allen* v. *Shepard,* 87 id. 314; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180.) Where the inadequacy is gross, the purchaser can retain his advantage only by showing that he acquired title by proceedings free from fault or irregularity. If, says Mr. Freeman, the inadequacy can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be vacated unless the complainant was himself in fault or the rights of innocent third parties have become dependent on the sale. While inadequacy alone may not, upon the grounds of public policy, be sufficient, of itself, to set aside a sale on execution or a

judicial sale, yet where there are circumstances of irregularity or of fraud, or that show that unfair advantage was sought by the purchaser or the person benefited by the sale, the inadequacy of price may be always taken into consideration and may become conclusive evidence of fraud. (Freeman on Executions, sec. 309; *Morris* v. *Robey,* 73 Ill. 462; *Davis, Cory & Co.* v. *Chicago Dock Co. supra,* and authorities cited.) In this case there is a palpable, gross inadequacy in price, and that there are serious errors and irregularities in the proceedings cannot be questioned. * * * It seems improbable that Mrs. McCambridge would have permitted redemption to expire, under the circumstances here shown, if she had notice of its sale. It was the duty of the officer holding the execution to notify the defendant thereof before proceeding to levy the same, when that was practicable. Taking all these circumstances into consideration, the gross inadequacy of the price at which the land was sold becomes, we think, strong evidence that the purchaser sought and obtained undue advantage, and the inference of fraud on his part, or a fraudulent purpose in manipulating these proceedings for the purpose of gaining such advantage, becomes irresistible."

There is another good reason why the sale was properly set aside. The evidence shows that the judgment in question was rendered September 27, 1893. On November 14, 1893, a transcript was filed in the circuit court, and on January 4, 1894, an execution was issued upon that transcript and returned "no property found." Michael Glasbrenner died in June, 1895, and in June, 1900, appellee moved into the premises and occupied them as a homestead. Section 6 of chapter 77 (Hurd's Stat. 1903, p. 1134,) provides that "no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon the revival of the same by *scire facias."* The judgment in question therefore expired in 1900, and from that time until August 23, 1902, it was not a valid lien upon the prem-

ises. During all this time they were occupied by appellee as a homestead, which thus became a prior right to that of the judgment. Section 1 of chapter 52 (Hurd's Stat. 1903, p. 943,) provides "that every householder having a family shall be entitled to an estate of homestead to the extent in value of $1000, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as thereinafter provided." Section 10 provides that in case the creditor or officer holding an execution against the householder is of the opinion that the premises are worth more than $1000, three householders shall be summoned as commissioners to appraise the premises, and if in their opinion the premises can be divided without injury to the interest of the parties, they shall set off so much of the premises, including the dwelling house, as in their opinion shall be worth $1000, and the residue may be advertised and sold by the officer on the execution. The statute also provides that where the homestead premises are not worth more than $1000 a judgment against the owner shall be no lien, and he may sell the same to any person, and the purchaser who goes into the possession will hold the premises free from the vendor and all claims of his creditors, by judgment or otherwise; but where the premises are worth more than $1000, a judgment or decree rendered against the homestead will be a lien on the value of the premises in excess of $1000. Section 11 of the same act provides for the manner in which they may be sold. These statutory provisions were in no way complied with before the sale by the sheriff.

In the case of *Bach* v. *May,* 163 Ill. 547, this court said (p. 550) : "Here no steps whatever were taken by the sheriff to set off the homestead, but, disregarding the statute, he

.went in and sold the premises in the same way he would have done if the premises had not been occupied as a homestead. * * * Under such circumstances we do not think a court of equity would be justified in upholding a sale. * * * Here the premises were sold, contrary to the plain provision of the statute, for a very small sum of money in comparison with the true value, and we think it would be an act of gross injustice to allow a sale of that character to stand."

In the case of *Bullen* v. *Dawson,* 139 Ill. 633, we said (p. 641) : "It has been frequently held, both under our present Exemption law and under the one previously in force, that a sale on execution of the homestead of the judgment debtor without observing the requirements of the statute in that behalf is void, so as to convey no title capable of being asserted in a court of law. (*Hartwell* v. *McDonald,* 69 Ill. 293; *Conklin* v. *Foster,* 57 id. 104; *Stevens* v. *Hollingsworth,* 74 id. 202; *Barrett* v. *Wilson,* 102 id. 302; *Nichols* v. *Spremont,* 111 id. 631; *Hubbell* v. *Canady,* 58 id. 425; *Hartman* v. *Schultz,* 101 id. 437.) But it is claimed that while such sale is void at law it passes a title to that part of the property sold which is in excess in value of $1000, which will be recognized and enforced in equity, either by setting off a homestead of the value of $1000, or, if the premises are not susceptible of division, by requiring the purchaser to pay that sum to the judgment debtor. In support of this view the following cases may be cited: *Loomis* v. *Gerson,* 62 Ill. 11; *Leupold* v. *Krause,* 95 id. 440; *Stevens* v. *Hollingsworth, supra.* * * * The price bid at the sale was only $338.65, while the evidence shows, or at least strongly tends to show, that the value of the property, over and above the homestead and all encumbrances, was many times that sum. The price bid therefor was grossly inadequate. While mere inadequacy of price is not ordinarily sufficient to justify setting aside a sale under execution and permitting the judgment debtor to redeem after the statutory period of redemption has expired, the rule is that such inadequacy of price, if

gross, will be sufficient when taken in connection with other, and sometimes even slight, circumstances of irregularity in the mode in which the sale was conducted. It can scarcely be pretended that the failure of the sheriff to take the steps prescribed by the Exemption law before selling the premises in question was not an irregularity or that it was not prejudicial to complainant. Property can be sold for the highest price only when the sale is legal and regular. No competition in bidding is likely to arise when the sale attempted to be made is one which will be void in law, and only confer upon the purchaser an equitable right of a somewhat precarious and doubtful character. The sheriff should have exposed said property to sale in that manner which would be likely to produce the highest price, and that could only be done by following the requirements of the Exemption law. Furthermore, no demand seems to have been made upon the complainant for the payment of the judgment, and no notice was given him that the sale was contemplated. If such demand had been made or notice given he would have had an opportunity, by paying off the judgment, to save his property from sacrifice. If steps had been taken to set off the homestead it may be that the premises would have been found incapable of division, and then the complainant would have had an opportunity to prevent a sale altogether by paying the excess of the appraisement over the $1000. These irregularities were clearly prejudicial to the complainant, and when taken together with the inadequacy of the price bid, sufficient ground was established for setting the sale aside and permitting the complainant to redeem. That, in substance, is what the decree does."

All of the facts recited above, taken in connection with the small amount for which the property sold, were sufficient to justify the court in setting aside the sheriff's deed to the premises. The decree rendered is equitable in all respects, requiring appellee to pay the amount of the judgment, together with legal interest thereon, before the deed is set

aside.   Under this decree the appellant will get the amount
of his judgment, with full interest, and appellee will retain
his property.

We find no reversible error, and the decree will be af-
firmed.
                                                *Decree affirmed.*