WILLIAM SKAKEL, Appellee, *vs.* THE CYCLE TRADE PUB-
LISHING COMPANY *et al.* Appellants.

*Opinion filed December 15, 1908—Rehearing denied Feb. 3, 1909.*

1. JUDICIAL SALES—*public policy requires that stability be given
judicial sales.* Public policy and the interests of debtors require
that stability shall be given judicial sales, and they should not be
disturbed unless there has been some mistake, fraud or violation of
duty by the officer making the sale or by the purchaser.

2. SAME—*when mere inadequacy of price is not ground for
setting aside a sale.* Mere inadequacy of price will not justify a
court of equity in setting aside a judicial sale where there is a
right of redemption.

3. SAME—*party may bid on lots singly or en masse, as he sees
fit.* Where several lots are levied upon under an execution, a per-
son attending the sale is not required to bid when the lots are
offered singly, even though the value of a single lot is in excess
of the amount of the judgment, and he violates no duty which he
owes to the judgment debtor if he withholds his bid until the lots
are offered *en masse.*

4. SAME—*when omission of word "property" from copy of re-
turn of an execution is not material.* The omission of the word
"property," or other similar word, after the word "personal," in
the copy of the return of an execution contained in the transcript
of the proceedings before a justice of the peace, is not material, as
the word "personal," used under such circumstances, could mean
nothing but goods and chattels out of which the judgment could
be made by the constable, as commanded in the execution.

5. SAME—*when equity should not set aside sale.* A court of
equity should not set aside a deed based on an execution sale, even
though the price bid at the sale was inadequate, where the judg-
ment was valid and enforceable and the sale regular in all respects,
and where the judgment debtor paid no attention to the sale, re-
fused, after the sale, to settle for less than the amount of the judg-
ment, and made no effort to redeem or to pursue any of the legal
remedies open to him.

VICKERS, HAND and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the
Hon. JULIAN W. MACK, Judge, presiding.

JOHN MAYNARD HARLAN, for appellants.

EDWARD B. HEALY, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 25, 1902, William Skakel, appellee, filed his bill in equity in the circuit court of Cook county against the Cycle Trade Publishing Company and James Artman, appellants, asking the court to set aside a judgment recovered against him in favor of said cycle company before a justice of the peace of said county on September 21, 1900, and a sale of real estate made by the sheriff of said county to Artman on May 21, 1901, in pursuance of the transcript filed in the office of the clerk of the circuit court and an execution issued thereon. The grounds for relief alleged were, that the judgment was taken in violation of an agreement between the attorneys of the parties, under which the suit had been continued from time to time from July 23, 1900, until September 21, 1900, and that he had a good defense, and the bill also alleged that the property sold for $132.04 was worth $20,000. After the bill was filed and before answering, defendants, for the purpose of inducing a settlement and avoiding the expense of litigation, offered to accept $75, which was a little more than half the amount due, and settle the whole matter, but the offer was rejected. The defendants then filed their answer and the replication was filed thereto. On March 5, 1906, Artman paid $332.99 taxes on the property for the year 1905. On June 19, 1906, the complainant filed a supplemental bill, alleging that a deed had been made by the sheriff and asking to have it set aside. On July 1, 1907, Artman paid $332.27 taxes for the year 1906, and on March 19, 1908, he paid $352.68 taxes for the year 1907. The cause came on for hearing and the court heard the evidence, and afterward, on March 31, 1908, gave the complainant leave to file instanter an amendment of his bill upon the terms of paying to Artman the taxes paid, as aforesaid, with interest, and $500 attorney's fees.

The amendment was made, alleging that the transcript filed with the clerk of the circuit court contained this copy of the return on the execution issued by the justice:

"The within named defendants, William Skakel and Edmund Church, have no personal in my county whereof I can cause to be made the judgment and costs within mentioned, or any part thereof, according to the command of the within writ, and I therefore return the same, no part satisfied, this eleventh day of March, 1901.

H. B. GOODRICH, *Constable."*

—and further alleging that the levy was grossly excessive, an abuse of the process of the court and a fraud upon the rights of complainant, and that the sale was made *en masse.* The court thereupon on the same day entered a decree specifically finding, and reciting in detail, the requisite facts to show that the judgment and the sale were legal in every respect; that the sheriff at the sale first offered the premises in separate tracts or lots, and no bid having been made for any of said tracts or lots separately, he then offered any two or more, less than the whole number, together, and no bid having been made for any two or more of said tracts or lots less than the whole number, he then offered the premises together and they were sold by him for $132.04. The decree found that the attorney of the cycle company notified complainant that the levy had been made and the premises had been advertised for sale and informed complainant of the time fixed for the sale. The court found as a fact that the five lots sold were worth $4000 each and the whole premises worth $20,000, and concluded, as a matter of law, that the levy upon the four lots and bidding for and purchasing the whole was a fraud upon the complainant. The court therefore decreed that Artman should convey all his interest in the premises to the complainant upon re-payment of the amount of the sale, with interest at six per cent, and the amount of the taxes, with interest at the same rate, and $500 solicitor's fees. From that decree this appeal was prosecuted.

The judgment was rendered by the justice on September 21, 1900, and at the time of the levy on the real estate the complainant was notified of the fact and of the time when the sale would take place. He had been served with process in the suit and had paid no attention to it after his recovery from the illness on account of which it had been continued. If he first learned of the judgment when it was too late to appeal and he had not been at fault, there was still time and opportunity to remove the case to the circuit court by *certiorari*. He paid no attention to the notice of the levy or to the sale, but within a year after the sale, when he had a right to redeem, he filed his bill to set aside the judgment and sale. When the bill was filed the cycle company offered to accept $75 in full of the claim, but the complainant rejected the offer. He still had several months to exercise his legal right to redeem the property, but he made no redemption, and on September 30, 1902, the sheriff made a deed to Artman. On the day the decree was rendered, and after the cause was heard, the complainant for the first time, by his amendment, charged the defendants with fraud, and alleged that the sale was made *en masse* and that the word "property" was omitted in the copy of the constable's return included in the transcript. The complainant failed and neglected to pursue any of the legal remedies that were open and available to him, and there is no element in the case which commends him to a court of equity.

The only possible ground of complaint is that valuable property was sold for a small price, and it is settled beyond controversy that mere inadequacy of price will not justify a court of equity in setting aside a judicial sale where there is a right of redemption. Public policy and the interest of debtors require that stability should be given to judicial sales, and that they should not be disturbed unless there has been some mistake, fraud or the violation of some duty by the officer making the sale or the purchaser. In *Davis* v.

*Pickett,* 72 Ill. 483, this court affirmed a decree dismissing the bill where a forty-acre tract worth $300 was sold for $5; a quarter section worth $2000 to $3000 was sold for $2.50, and two town lots worth $75 each were sold for $2. The rule was there emphatically stated that mere inadequacy of price, however great, is not ground for setting aside a judicial sale. In *O'Callaghan* v. *O'Callaghan,* 91 Ill. 228, a house and lot worth $4000 were sold for $10, but it was held that such fact, alone, was not ground for setting aside the sale, and that the circuit court could not do otherwise than it did and dismiss the bill. In *Dobbins* v. *Wilson,* 107 Ill. 17, where property was sold for $2700 and re-sold by the purchaser for $18,000, and the complainant did not choose to avail himself of the privilege of redemption, it was held that equity would afford no relief. There is no case cited by counsel where a sale has been set aside for mere inadequacy of price, where the owner could have paid the amount of the bid and redeemed his land.

The point is made that the transcript omitted the word "property" after the word "personal," in the return of the constable. If this rendered the sale void so that the purchaser acquired no title, it appeared on the face of the transcript and would afford no basis for relief in a court of equity. The court, in the decree, found and recited as a fact that the execution was duly issued, and that the constable "did duly return the said execution into the said justice court with his return duly endorsed thereon, by which it appeared that the defendants named in said execution, William Skakel and Edmund Church, had no personal property in said Cook county whereof could be made the said judgment and costs in said execution mentioned, or any part thereof, according to the command of said writ, and that therefore said constable returned the same no part satisfied the 11th day of March, A. D. 1901." No cross-errors have been assigned on that finding of fact. It appears, then, that there was a mere omission of a word in the copy filed

in the clerk's office, but the copy could mean nothing except that no personal property was found. The execution commanded that of the goods and chattels of the defendants the constable should make the amount of the judgment, and the statute made it the duty of the constable to proceed with the collection of the execution by levy on personal property, and when it should appear by the return of the execution that the defendants had not personal property sufficient to satisfy the judgment and costs, a transcript might be filed in the office of the clerk of the circuit court. The word "personal" applied to anything out of which the judgment and costs could be made by the constable,—could mean nothing but personal property of the defendants. Artman had a right to bid as he saw fit and violated no duty which he owed to the complainant in so doing. The judgment of the justice of the peace was a valid and enforceable claim against the complainant and the sale was regular in all respects. The complainant did not choose to avail himself of the right of redemption which was open to him, but chose to stand by while Artman paid the taxes on the property, and refused even to settle the claim for a part of the amount for which the land was sold. Under these circumstances a court of equity ought not to give him any relief.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting:

I do not concur in the opinion of the majority of the court in this case, and will briefly state the reasons why I do not consider the reasoning sound, or the conclusion just and equitable, reached in the majority opinion.

The fundamental error in the majority opinion arises from the assumption that "the only possible ground of complaint is that valuable property was sold for a small price." If this conclusion was warranted by the facts in the record

then the conclusion drawn in the majority opinion, that mere inadequacy of price is not a sufficient ground for setting aside a judicial sale, could not be the subject of serious controversy.  That this assumption is a misapprehension is shown by the fact that the majority opinion proceeds to point out and discuss an objection that was made to the transcript, in respect to the omission of the word "property" after the word "personal," in the return of the constable. In my opinion the disposition made of this objection to the transcript, in the majority opinion, wherein it is said, "if this rendered the sale void, so that the purchaser acquired no title, it appeared on the face of the transcript and would afford no basis for relief in a court of equity," announces a doctrine that has no application to bills, such as this was, to redeem one's real estate from an irregular sale.  I have always understood the law to be that one whose property had been sold for the payment of a just debt might for sufficient reason file a bill in equity for the purpose of removing the cloud upon his title, even though the judgment might be void and unenforcible at law.

I do not, however, regard the judgment under which the real estate in this case was sold as void.  It is not necessary, in order to give appellee a standing, in equity, to redeem, that he should show that the judgment under which the sale was made was void.  If there were irregularities in the procedure not affecting the jurisdiction of the court, such facts, connected with gross inadequacy of price, will warrant a court of equity in setting aside the sale upon such equitable terms as good conscience and fair dealing require.

Upon referring to the appellants' abstract of the record (pages 80 to 83, inclusive,) I find what purports to be an abstract of the transcript filed in the circuit court, upon which the execution was issued.  This abstract fails to show that the summonses issued by the justice, and the returns thereon, were copied in the transcript.  Section 136 of chapter 79 of the Revised Statutes of 1905 provides as

follows: "Every transcript desired to be used for the purposes aforesaid, shall be certified by the justice of the peace making the same, to be truly copied from the files and books of his office, and shall contain a copy of the original and each subsequent summons or process issued by the justice of the peace, the return of the officer or officers thereon, the judgment and the execution or executions issued thereon, with the return of the officer upon the same, and a copy of his docket in the case." This statute is mandatory, and a transcript which fails to contain copies of all processes issued by the justice of the peace is insufficient. (*Hobson* v. *McCambridge,* 130 Ill. 367; *Wooters* v. *Joseph,* 137 id. 113; *Merrick* v. *Carter,* 205 id. 73.) Thus we see that the statute requiring the copies of the summonses and other processes to be in the transcript was disregarded. This was a serious irregularity.

The abstract which appellants have filed, and which I must assume states the facts as favorable to appellants as the record will warrant, shows that the transcript was not certified to by the justice of the peace who rendered the judgment. The law requires that the transcript shall be certified by the justice of the peace. This is another irregularity not noticed in the majority opinion.

In order to warrant the sale of real estate upon an execution issued upon a transcript from a justice of the peace, it must appear that there has been a return of the execution showing that the judgment debtor has no personal property out of which the debt can be collected. The return in this case of the only execution shown in the transcript was that the defendants, "William Skakel and Edmund Church, have no *personal* in my county whereof I can cause to be made the judgment and costs within mentioned, or any part thereof, according to the command of the within writ, and I therefore return the same no part satisfied." This return does not appear to have been signed by anyone, and the abstract does not show whether it was made by a constable or

written by some unauthorized person. I think that the signature of a constable to the return is important and that a failure to sign it is a very grave irregularity. No one could be sued for making a false return such as the above, without resorting to evidence to show who, in fact, made the return.

In the next place, this return might be literally true and yet the defendants have $100,000 of personal property liable to execution. The return does not show that the defendants have no personal property, but simply says the defendants have no "personal in my county whereof I can cause to be made the judgment and costs." Of course, a court of equity, in order to accomplish justice, might read into this return the word "property" after the word "personal," but it seems to me that it is a perversion of equitable principles to supply a defective return in order to uphold a sale of $20,000 worth of real estate for $132.04. I may guess or surmise that there was an omission of the word "property" after the word "personal" in the return, but the word "property" is not the only word that might be read into this return and make complete sense. I might insert the word "chattels," "effects," "estate," "goods," "earnings," etc., any one of which would make the sense complete but would not make the return legal. This return, I think, is not in compliance with the statute.

With these defects and irregularities in the record I think it is a serious misapprehension to assume that this sale must be set aside for inadequacy, alone. In the case of *Hobson* v. *McCambridge, supra,* the suit was docketed, "T. Battles, for the use of Dr. W. H. Hobson," but the judgment was in favor of W. H. Hobson. The transcript filed with the circuit clerk showed an execution issued by the justice in favor of "T. Battles, for the use of Dr. W. H. Hobson." There was there no other irregularity. It was perfectly clear that W. H. Hobson was the beneficial plaintiff and the judgment was in his favor, yet this court in

that case held that the slight variance between the execution and the judgment, in connection with the fact that $2000 worth of real estate had been sold to satisfy a judgment of $56.60, was such an irregularity as to. warrant a court of equity in depriving the purchaser of the advantage of a title acquired through such sale. In the course of the opinion in that case, on page 378, this court said: "While inadequacy, alone, may not, upon the grounds of public policy, be sufficient, of itself, to set aside a sale on execution, or a judicial sale, yet where there are circumstances of irregularity or of fraud, or that show that unfair advantage was sought by the purchaser or the person benefited by the sale, the inadequacy of price may be always taken into consideration and may become conclusive evidence of fraud.—Freeman on Executions, sec. 309; *Morris* v. *Robey,* 73 Ill. 462; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180."

In *Wooters* v. *Joseph, supra,* the transcript filed in the circuit court was complete in all respects except that the copy of the execution issued on the judgment failed to show that it was signed by the justice. This was held to be a fatal defect.

In *Merrick* v. *Carter, supra,* the transcript showed the following return upon an execution issued by the justice: "Demand made August 7, 1894. Return execution no part satisfied, August, 1904." This return was held sufficient, in connection with the sale of $3500 worth of real estate for $100, to justify setting the sale aside. On page 76 in that case this court said: "The method of enforcing the judgment of a justice against real estate is purely statutory, and such statutory proceeding must be strictly pursued or no title will be obtained by virtue of a sale thereunder.— *Illinois Central Railroad Co.* v. *Weaver,* 54 Ill. 319; *Webster* v. *Steele,* 75 id. 544."

As already suggested, in the case at bar four lots belonging to appellee, worth in the aggregate $20,000, were

sold in mass for $132. In view of the serious irregulari-
ties pointed out I think that a court of equity ought not
to hesitate to set aside this sale upon equitable terms. This
the court below did, requiring appellee to pay, in addition
to the judgment, costs, interest and taxes, an attorney fee
of $500. While appellee's conduct in connection with this
transaction does not commend him to the favorable con-
sideration of the court, still I think that the terms im-
posed by the court below was ample punishment without
depriving him of $20,000 worth of real estate. I think the
judgment below should be affirmed.

HAND and CARTER, JJ.: We concur in the dissenting
opinion of Mr. Justice VICKERS.